McDonough *v.* United States Steel Corporation, Appellant (et al.).

270

Argued April 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*James H. McConomy,* with him *Kathleen A. Merry,* and *Reed, Smith, Shaw & McClay,* for appellant.

*Allan H. Cohen,* with him *Gatz, Cohen, Segal & Koerner,* for appellee.

271

OPINION BY HOFFMAN, J., June 21, 1974:

This is an appeal from an order of the Court of Common Pleas, Allegheny County, denying appellant United States Steel's motions for judgment n.o.v. and for a new trial.

Plaintiff's decedent was employed by the Langenfelder Co. as a machinery operator. Langenfelder was an independent contractor of U. S. Steel at an iron ore processing plant in Saxonburgh, Pennsylvania. Langenfelder's responsibility under the contract involved the stockpiling of iron ore when delivered to the plant, and the recovery of the ore when needed in the plant.

The ore arrived by railroad car and was loaded into giant earth moving machines called "Euclids" which were supplied by Langenfelder and were capable of hauling 40 tons of ore. The Euclids were then driven to an area designated by U. S. Steel where the ore was piled. In order to pile the ore, the operators had to drive onto the pile and release the ore as they traveled along the top of the pile.

Because ore was available only on a seasonal basis, stockpiling of considerable amounts of ore was required during the summer months. In depositing ore on the top of the pile, and in order to make maximum use of the area used for piling, the Euclid drivers were required to spread the ore evenly across the top of the pile so that the pile would not peak and thus limit its height. To do this, the Euclid operators had to drive within 1½ to 2 feet of the edge of the pile while depositing the ore. At times, the piles reached heights of two hundred feet.

During peak periods of ore shipment, the stockpiling operations were conducted on an around-the-clock basis. Euclid operators testified that visibility during the night shifts was very poor, and that the edge of the pile was practically indiscernible. Other than the headlights of the Euclids, which were of the same inten-

sity as those of an automobile, there was no other source of artificial lighting to illuminate the pile. The headlights, while providing illumination in front of and behind the vehicle, provided no lighting to the sides of the vehicle where the operators had to "run the edge." There were shadows over the pile and smoke from the plant frequently drifted over the pile making visibility even worse. The ore had a tendency to slide, causing the edge of the pile to sag and break, making the line to be driven uneven. Appellee's expert, a safety engineer, testified that lighting on the Euclids was inadequate for the job to be performed, and that accepted safety provisions for a job of this nature required the use of elevated floodlights.[1]

Appellee's decedent was employed by Langenfelder as a Euclid operator. On the night of August 28, 1968, decedent was assigned to work the edge of a 40-50 foot high ore pile. At approximately 2:00 a.m., the de-

---

[1] There was no error in allowing the testimony of appellee's safety expert. The witness was a highly qualified engineer with extensive experience in safety engineering whose qualifications were unquestioned by appellant at trial. His qualifications and experience convincingly establish his competency. *Griffith v. Clearfield Truck Rentals*, 427 Pa. 30, 233 A.2d 896 (1967). Nor was the subject of his testimony such that its admission was unnecessary as within the common knowledge and observation of laymen. See *Graham v. Pennsylvania Co.*, 139 Pa. 149, 21 A. 151 (1891). He testified concerning the inadequacy of the Euclid's headlights and the need for and availability of other sources of light as a safety requirement. Whether testimony of this nature is proper is generally within the discretion of the trial judge. *Hayes Creek Country Club v. Central Penn Quarry*, 407 Pa. 464, 181 A.2d 301 (1962). We can find no abuse of discretion in the trial judge's allowance of the testimony concerning the technical aspects of the lighting problem, and the standards for safety lighting in operations similar to that involved in the instant case. The witness's reference to accepted published authorities on the subject of safety lighting was entirely proper. *Cummings v. Borough of Nazareth*, 430 Pa. 255, 265, 242 A.2d 460 (1968).

cedent's Euclid was discovered at the base of the pile, having rolled over the edge of the pile, crushing the cab and killing decedent. The tracks of his vehicle were in a straight line along the top of the pile to a point where the edge was broken and the Euclid went over.

Langenfelder had performed these operations under contract with the appellant since 1958, and worked as scheduled by the appellant. U. S. Steel safety personnel were at the stockpiling operation on a daily basis. The general foreman of the Saxonburg operation testified that he was familiar with Langenfelder's operations and knew that the Euclids had to operate close to the edge on an around-the-clock basis. Other Euclid operators testified that their vehicles had run off the edge on several prior occasions during the night shift due to the poor visibility at the edge of the pile.[2]

After a jury returned a verdict for the appellee, appellant moved for a judgment n.o.v. or for a new trial. Appellant contends, inter alia, that the court erred in refusing these motions because Pennsylvania law does not impose liability on the employer of an independent contractor under these facts.

Normally, an employer of an independent contractor is not responsible for the negligent acts or omissions of the contractor or its employees. *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 (1963). When an employer has exercised care in choosing a careful and competent contractor to do work on the employer's premises, and has entrusted the control and possession of the premises, and the performance of the

---

[2] Appellant's contention that this evidence of other similar accidents was inadmissible is without merit as it was offered to show notice of a dangerous condition and admitted for this limited purpose. *Yoffee v. Pennsylvania Power and Light Co.*, 385 Pa. 520, 123 A.2d 636 (1956); *DiFrischia v. New York Central R.R. Co.*, 307 F.2d 473 (3d Cir. 1962).

task to that contractor, the employer is generally shielded from liability to third parties due to the negligence of the contractor. An employer, however, must use reasonable care to make the premises safe, or warn the contractor of any dangerous condition thereon. *Grace v. Henry Disston & Sons, Inc.*, 369 Pa. 265, 85 A.2d 118 (1952).

There are, however, exceptions to this general rule of non-liability, and the instant case, falls within one of these exceptions. The exception does not rest upon any personal negligence of the employer, but is a rule of vicarious liability. The rule is stated in Section 416 of the Restatement of Torts, 2d :[3]

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."[4]

In the instant case, the appellee contended that the decedent was exposed to a peculiar risk ("running the edge" at night) which necessitated special precautions (the provision of adequate lighting to illuminate the pile) that the contractor negligently failed to take. Thus, the appellee argues that appellant was properly found liable for the contractor's failure to take said precautions.[5]

---

[3] Section 416 was adopted in Pennsylvania in *Philadelphia Electric Co. v. Julian*, 425 Pa. 217, 228 A.2d 669 (1967).

[4] The Section renders irrelevant contract provisions placing the responsibility for all necessary safety precautions on the independent contractor. Appellant's right of indemnity against contractor by virtue of a contract is not involved herein.

[5] There is no contention that the decedent, as an employee of the contractor, was not within the scope of the coverage of §416.

The "peculiar risk" is defined in Comment (d) to §416: "In order for the rule stated in this Section to apply, it is not essential that the work which the contractor is employed to do be in itself an extra-hazardous or abnormally dangerous activity, or that it involve a very high degree of risk to those in the vicinity. It is sufficient that it is likely to involve a peculiar risk of physical harm unless special precautions are taken, even though the risk is not abnormally great. A "peculiar risk" is a risk different from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the nature of the work to be done which calls for special precautions. (emphasis supplied)."

Comment (e) further explains "peculiar risk". "It is not essential that the peculiar risk be one which will necessarily and inevitably arise in the course of the work, no matter how it is done. It is sufficient that it is a risk which the employer should recognize as likely to arise in the course of the ordinary and usual method of doing the work, or the particular method which the employer knows that the contractor will adopt."

Section 416 is thus applicable only to situations in which the negligence of the independent contractor consists of the failure to take the precautions necessary for the safe performance of a task. The risk of harm must arise from the peculiar or inherent nature of the task or the manner of performance, and not the ordinary negligence which might attend the performance of any task. "[L]iability does not ordinarily extend to so called 'collateral' or 'casual' negligence on the part

See *Woolen v. AeroJet General Corp.*, 57 Cal.2d 407, 20 Cal. Rptr. 12, 369 P.2d 708 (1962); *Wagner v. Grannis*, 287 F. Supp. 18 (W.D. Pa. 1968), holding employees to be within the scope of §416.

of the contractor . . . in the performance of the operative details of the work. The negligence for which the employer [of a general contractor] is liable . . . must be such as is intimately connected with the work authorized and such as is reasonably likely from its nature." *Van Arsdale v. Hollinger,* 68 Cal.2d 245, 252, 66 Cal. Rptr. 20, 437 P.2d 508 (1968) (quoting Harper, Law of Torts (1933) §292); see *Thorne v. United States,* 479 F.2d 804 (9th Cir. 1973). Prosser has stated that the principle is applicable "to work in which there is a high degree of risk *in relation to the particular surroundings,* or some rather specific risks or set of risks to those in the vicinity . . . The emphasis is on the peculiar character of the risk, and the need for special care." Prosser, Law of Torts, 3rd Ed. (p. 486).[6]

---

[6] The distinction between "ordinary risks" and "peculiar risks" has been described as "shadowy at best". The definitions appearing in the Restatement provide general guidelines for making the distinction, and the illustrations give examples contrasting ordinary and peculiar risks. See Illustration 3 to Comment (e) and Comment (d) to §416. The determination is a mixed question of law and fact, and may, in clear cases, be made by the trial judge as a matter of law. *West v. Guy F. Atkinson Construction Co.,* 251 Cal. App.2d 296, 59 Cal. Rptr. 286 (1967). The circumstances of the instant case are such that reasonable minds might differ as to whether the risk was peculiar and the issue was therefore properly submitted to the jury. In most cases the determination will depend on the unique facts and circumstances of the particular job and its surroundings. See, e.g. *Van Arsdale v. Hollinger,* 68 Cal.2d 245, 66 Cal. Rptr. 20, 437 P.2d 508 (1968) (peculiar risk found to exist in the eradication of painted lines on partially closed highway) ; *Thorne v. United States,* 479 F.2d 804 (9th Cir. 1973) (peculiar risk found to exist in trenching operation where special precaution of anchoring sides of trench not taken) ; *McDonald v. City of Oakland,* 255 Cal. App.2d 816, 63 Cal. Rptr. 593 (1967) "Peculiar risk of painting interior of water tank existed in the absence of adequate ventilation of fumes. The independent contractor did provide for ventilation, but the precautions were inadequate. The employer of the contractor was held liable."

Under the facts of the instant case, we believe that the contracted work posed a peculiar risk for which special precautions should have been, but were not taken. Because the ore had to be stockpiled in great amounts, and the area for storage limited, the need to "run the edge" to maximize use of the area arose from the requirements of the job itself. This job requirement plus the ore pile's susceptibility to sagging and sliding made lateral visibility a paramount factor in the safe operation of the Euclids. When conducted during daylight hours lateral illumination was adequate and no peculiar risk was present. During the night shifts, however, with smoke hovering over the pile, the evidence shows that lateral visibility was woefully inadequate for the Euclids to safely "run the edge." Because of the "particular surroundings" of the operation, the previous night shift accidents, and the presence of its safety personnel at the job site, appellant knew or should have known of the visibility problems attending the nighttime stockpiling.[7] The jury was thus fully justified in finding a recognizable peculiar risk, and holding appellant liable for the contractor's failure to take the special precaution of providing artificial lighting.

The cases cited by appellant are inapposite. In *Hader v. Coplay Cement Manufacturing Co.*, supra, plaintiff's theory of recovery was the retention of control by the employer over the operations of the independent contractor. The court found a lack of control and, therefore no liability on the employer. See also, *Fisher v. United States*, 441 F.2d 1288 (3d Cir. 1971). There was no contention that the risk involved (falling from a catwalk on a construction project) was any-

---

[7] Since the inception of its operations in 1958, Langenfelder's methods did not change. Operations were continually conducted on an around the clock basis during summer months.

thing other than the ordinary type that would attend any construction work. In *Crane v. I.T.E. Circuit Breaker Co.,* 443 Pa. 442, 278 A.2d 362 (1971), plaintiff alleged control, in addition to contending that the owner failed to warn of a dangerous condition on the premises. The court found a lack of control and that the condition complained of was not such as to create a duty on the owner to warn. *Funari v. Valentino,* 435 Pa. 363, 257 A.2d 259 (1969) involved an injury to an employee of an independent contractor caused solely by the faulty equipment which the independent supplied. The court held that the employer had no duty to insure that the contractor did not use faulty equipment. Such a risk would arise in any job and cannot be deemed peculiar to or inherent in a particular job.

Only two Pennsylvania Supreme Court cases have construed §416. In *Philadelphia Electric Co. v. Julian,* supra, n.3, the independent contractor was held liable for its sub-contractor's negligence in failing to take precautions necessary to guard against damage to underground gas mains in the installation of guard rails. Although the subcontractor should have recognized the danger of excavating near the gas mains, the employer was nevertheless held liable under §416 for its failure to further warn. The employer was held liable despite the fact that it may have relied on the independent's knowledge of the danger. The Pennsylvania case denying recovery on the basis of §416 is *Brletich v. United States Steel Corp.,* 445 Pa. 525, 285 A.2d 133 (1971). There, the plaintiff, an employee of an independent contractor, was injured as a result of the negligent operation of a crane by the employee of another sub-contractor. The court denied recovery on a control theory and held that the risk of negligence of a co-employee was an ordinary risk, not within the purview of the peculiar risk provisions of §416. Accord,

*West v. Guy F. Atkinson Construction Co.*, 251 Cal. App. 296, 59 Cal. Rptr. 286 (1967); See also Comment (d) to §416.

Appellant's contention that the court erred in not instructing the jury that the peculiar risk be "one of abnormally great danger" is without merit. The Court charged almost verbatim the Restatement language which contains no requirement that an abnormally great danger be present, and, in fact, specifically excludes such a requirement. See Comment (b) to §413 explaining peculiar risk as that term is used in §416; See also Comment (d) to §416, supra.

Appellant's argument that there was insufficient evidence to establish proximate cause of the injury is equally without merit. It is clear that a plaintiff need not exclude every conceivable cause of an accident in order to recover. *Jones v. Treegoob*, 433 Pa. 225, 249 A.2d 352 (1969). Our review of the record convinces us "that there [were] sufficient facts for the jury to say reasonably that the preponderance [of all the evidence and favorable inferences therefrom] favors liability". *Smith v. Bell Telephone Co.*, 397 Pa. 134, 138, 153 A.2d 477, 479 (1959).[8]

Judgment and order affirmed.

---

[8] We cannot find any reversible error in the testimony of appellee's actuarial expert. Although the practice of an actuary placing a final figure representing present worth has been condemned as possibly usurping the jury's function in determining a decedent's present worth [see Allendorf v. Elgin, J. & E. Ry. Co., 8 Ill.2d 164, 133 N.E.2d 288 (1956)], the trial judge clearly charged the jury with the responsibility of determining damages on their own calculations. That the jury did so is evident from the verdict which was considerably less than the actuary's figures.