### NATIONWIDE MUTUAL INSURANCE COMPANY

v.

### PHILADELPHIA ELECTRIC CO. and Carr & Duff Electrical Pole Line Construction, Inc. and Bellmont Fund, Inc. and Curtis Jones.

Civ. A. No. 76–14.

United States District Court, E. D. Pennsylvania.

Nov. 30, 1977.

Christopher C. Fallon, Jr., Philadelphia, Pa., for plaintiff.

Barry F. Greenberg, Philadelphia, Pa., for Phila. Electric.

David F. Campbell, Philadelphia, Pa., for Carr & Duff.

Henry J. Lotto, Philadelphia, Pa., for Bellmont.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this action based on diversity of citizenship, the plaintiff, Nationwide Mutual Insurance Company (Nationwide) brought suit against Philadelphia Electric Company (PECO), Carr & Duff Electrical Pole Line Construction, Inc. (Carr & Duff), Bellmont Fund, Inc. (Bellmont), and Curtis Jones (Jones) to recover contribution pursuant to the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act.

This action was tried before a jury which returned a verdict in favor of the plaintiff against Bellmont and Carr & Duff. The Court granted PECO's motion for a directed verdict at the close of the plaintiff's case. At the close of all the evidence the Court granted Jones' motion for a directed verdict. Bellmont has moved this Court for a new trial and/or for a judgment n. o. v.; the plaintiff has moved for an award of interest; Carr & Duff has moved for a new trial; and all parties have requested the Court to mold the verdict. After carefully considering the grounds urged in these motions, the Court has determined that it must deny Bellmont's motion for judgment n. o. v., grant plaintiff's motion for an award of interest, and deny Carr & Duff's motion for a new trial and/or a judgment n. o. v.

The parties stipulated to the following facts: Sometime during the year 1966, Bellmont engaged Jones to construct an apartment building on a site located near the intersection of Red Lion and Clare Roads in Philadelphia. Bellmont was the owner of the project and Jones was the general contractor. In order to provide electric power for workers at the construction site, PECO was requested to install temporary electric service. In response to this request, on October 20, 1966 PECO installed a transformer on a pole on the north side of Red Lion Road which reduced the voltage normally carried on the overhead lines along Red Lion Road so that electricity could be provided at the construction site. After this service was provided, Bellmont and/or Jones complained to PECO that they were not able to secure sufficient electric power to operate their power tools, and asked PECO for an estimate to relocate the electric service to a point closer to the work being performed. At the request of Bellmont and/or Jones, Carr & Duff, an electric pole and line contractor, installed three power poles at the site and strung wire between them. Thereafter, PECO connected the wires erected by Carr & Duff with the power lines running along Red Lion Road and changed the location of the transformer.

It was further stipulated that on March 10, 1967, Altman Brothers, a carpentry subcontractor working on the construction site, engaged plaintiff Nationwide's insured, Walter Hinkle, to lift wood. Hinkle dispatched a hydraulic truck crane to the job site. At about 2:30 p. m., the cable on the crane became tangled. As George Baker and others worked to untangle the cable, the cable came in contact with overhead power lines previously installed by Carr & Duff. George Baker was electrocuted and subsequently died. Baker's estate sued Walter Hinkle (insured by plaintiff), PECO, Carr & Duff, Bellmont Fund and Curtis Jones. Shortly before the commencement of the trial of the tort action, Nationwide, acting on behalf of its insured, Walter Hinkle, settled the tort action with the estate of Baker for $75,000, an amount which all parties agreed was reasonable. Although Nationwide had obtained a release running in favor of all the defendants, none of the present defendants chose to voluntarily contribute to the settlement. (N.T. 1-47—51).

At trial before this Court, plaintiff contended that not only was its insured, Hinkle, negligent, but that the defendants were also negligent and that their negligence was a proximate cause of the accident. As a joint tortfeasor, plaintiff claimed the right to contribution from its fellow joint tortfeasors pursuant to the Uniform Contribution Among Joint Tortfeasors Act, 12 P.S. § 2082 *et seq.* This Act provides:

§ 2082.

For the purpose of this act, the term "joint tortfeasors" means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.

§ 2083.

(1) The right of contribution exists among joint tortfeasors; (2) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof; (3) A joint tortfeasor who enters into a settlement with the injured person

is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.

As stated by Justice Eagen in *Swartz v. Sunderlund*, 403 Pa. 222, 225, 169 A.2d 289, 291 (1961):

. . . a reading of the act signifies *that only two conditions* must exist before the right of contribution arises, namely, (1) that one joint tort-feasor has discharged the common liability or paid more than his prorata share; (2) that the liability of the other joint tort-feasor to the injured persons has been extinguished by the settlement.

In addition, as stated by Judge Scalera in *W. D. Rubright v. International Harvester Co.,* 358 F.Supp. 1388, 1392 (W.D.Pa.1973):

When . . . settlement occurs before the injured plaintiff has proven his original case at trial, the settling tortfeasor cannot enforce his right to contribution unless in a separate proceeding he proves that:

(1) The settlement figure was reasonable.

(2) The parties from whom he seeks contribution were in fact joint tortfeasors. *Swartz v. Sunderland,* 403 Pa. 222, 169 A.2d 289 (1961), Restatement Restitution § 86(d).

At trial the defendants did not question the reasonableness of the settlement. It was stipulated that "reasonableness" had been agreed to at the time the settlement was made. It was also stipulated that the liability of all defendants had been extinguished by the plaintiff's payment at settlement. The sole question presented to the jury was whether the defendants were in fact joint tortfeasors, the parties having agreed that the Court should mold the verdict. The jury returned a verdict in favor of the plaintiff, Nationwide, against the defendants, Carr & Duff, and the defendant, Bellmont.

*Bellmont's Motion For A Judgment n. o. v.*

In the instant case, plaintiff, Nationwide, seeks to enforce its right to contribution

against both Bellmont and Carr & Duff. Bellmont was the owner of property upon which an apartment building was to be constructed. Bellmont engaged Jones as general contractor for the construction of the apartment. Bellmont in turn engaged defendant Carr & Duff, an electrical pole and line contractor, for the installation of three poles upon which Carr & Duff strung electrical power lines. These lines were subsequently connected by PECO to its power lines running along a road adjacent to the construction site. It was these lines with which the deceased came in contact and was electrocuted. Evidence was presented to the jury that Carr & Duff had failed to comply with the National Electrical Code by failing to insulate these wires.

Plaintiff Nationwide based its case against Bellmont solely upon *Restatement (Second) of Torts*, § 416 which provides:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

The charge to the jury as to Bellmont's liability was based solely on § 416. And, as we have heretofore pointed out, the jury returned a verdict against Bellmont. Bellmont now seeks a judgment n. o. v. on the ground that § 416 was not applicable. We hold that § 416 is applicable and deny Bellmont's motion for judgment n. o. v.

■ Section 416 was adopted in Pennsylvania in *Philadelphia Electric Co. v. Julian*, 425 Pa. 217, 228 A.2d 669 (1967). This section provides an exception to the general rule that one who engages an independent contractor is not responsible for the negligent acts or omissions of the contractor or its employees. As stated by the Pennsylvania Superior Court in *McDonough v. United States Steel*, 228 Pa.Super. 268, 324 A.2d 542 (1974),

When an employer has exercised care in choosing a careful and competent contractor to do work on the employer's premises, and has entrusted the control and possession of the premises, and the performance of the task to that contractor, the employer is generally shielded from liability to third parties due to the negligence of the contractor. An employer, however, must use reasonable care to make the premises safe, or warn the contractor of any dangerous condition thereon. *Grace v. Henry Disston & Sons, Inc.*, 369 Pa. 265, 85 A.2d 118 (1952).

There are, however, exceptions to this general rule of non-liability . . . . The exception does not rest upon any personal negligence of the employer, but is a rule of vicarious liability. The rule is stated in Section 416 of the Restatement of Torts, 2d [supra].

324 A.2d at 545.

Judge Hoffman continued, stating the situations in which this exception would apply:

Section 416 is . . . applicable only to situations in which the negligence of the independent contractor consists of the failure to take the precautions necessary for the safe performance of a task. The risk of harm must arise from the peculiar or inherent nature of the task or the manner of performance, and not the ordinary negligence which might attend the performance of any task. "Liability does not ordinarily extend to so called 'collateral' or 'casual' negligence on the part of the contractor or his servants in the performance of the operative details of the work. The negligence for which the employer [of a general contractor] is liable . . . must be such as is intimately connected with the work authorized and such as is reasonably likely from its nature." *Van Arsdale v. Hollinger*, 68 Cal.2d 245, 252, 66 Cal.Rptr. 20, 24, 437 P.2d 508, 512 (1968) (quoting Harper, Law of Torts (1933) § 292); see *Thorne v. United States*, 479 F.2d 804 (9th Cir. 1973). Prosser has stated that the principle is applicable "to work in which there

is a high degree of risk *in relation to the particular surroundings*, or some rather specific risks or set of risks to those in the vicinity . . . The emphasis is on the peculiar character of the risk, and the need for special care." Prosser, Law of Torts, 3rd Ed. (p. 486).

324 A.2d at 546. Likewise in *Jacobini v. IBM*, 57 Pa.D. & C.2d 8 (1972), the court stated that § 416 is applicable only to injuries resulting from conditions bearing an unusual risk of physical injury.

■ As stated in *McDonough, supra,* and *Moss v. Swann Oil Co.*, 423 F.Supp. 1280 (E.D.Pa.1977), for this vicarious liability to apply, it is first necessary that the independent contractor commit an act of negligence which causes the plaintiff's injury. Here, the jury found that Carr & Duff, an independent contractor, was negligent in failing to insulate the wires and that this negligence was the proximate cause of George Baker's death. In imposing § 416 liability it is also necessary that the work in question presents a peculiar risk of harm unless special precautions are taken. *McDonough* and *Moss, supra, Restatement (Second) of Torts*, § 416, Comment (d).[1]

Based on these considerations, the evidence presented to the jury was more than sufficient to support the verdict against Bellmont.

In molding the verdict, however, we must next consider the question of whether Nationwide is entitled to contribution from both Bellmont and Carr & Duff. Nationwide claims that the $75,000 it paid the estate of George Baker was in settlement of its own, Bellmont's and Carr & Duff's liability and that each must contribute a one-third share. We disagree.

In this action for contribution pursuant to the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, *supra,* the parties agree that Pennsylvania law must be applied.

In *Parker v. Rodgers*, 125 Pa.Super. 48, 189 A. 693 (1937), the Pennsylvania Superior Court held in an analogous situation that where an employee is found negligent, the employer's share is identical to the employees in that the employer has not committed the tort but was liable solely on the basis of the respondeat superior doctrine.

*Parker* was a tort action to recover damages suffered in an automobile collision wherein the jury found that Mr. Rodgers, who owned and operated one of the automobiles, Glenzenger, the employee of a Mrs. Paugh, who was operating the second automobile, and Mrs. Paugh were, all three, liable. Rodgers' insurance carrier attempted to obtain contribution in the action on the theory that as among the three defendants, each was liable for one-third of the judgment. The court held that Mrs. Paugh and her driver were liable for only one-half of the judgment. In arriving at this conclusion the court reasoned that Mrs. Paugh was liable only for the negligence of her driver on the principle of respondeat superior. The court said:

The question now raised arises by reason of the fact that the three judgment debtors here involved were not in the same class. The rights of the plaintiff against the defendants and the rights of the defendants inter sese are not the same. The claim of the plaintiff was based on a tort and she was privileged to exact payment of the whole sum from any one or more of the defendants, while the claims of the defendants among themselves are founded on the applica-

1. Restatement (Second) of Torts, § 416, Comment (d) provides in part:

In order for the rule stated in this Section to apply, it is not essential that the work which the contractor is employed to do be in itself an extra-hazardous or abnormally dangerous activity, or that it involve a very high degree of risk to those in the vicinity. It is sufficient that it is likely to involve a peculiar risk of physical harm unless special precau-

tions are taken, even though the risk is not abnormally great. A "peculiar risk" is a risk differing from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community. It must involve some special hazard resulting from the nature of the work done, which calls for special precautions.

tion of equitable principles and do not sound in tort. . . .

This case, as we have said, is to be differentiated from others by the fact that the defendants are not all in the same class. . . .

Rodgers and Glenzinger were the persons who committed the actual tort or wrong as distinguished from a legal tort. Mrs. Paugh was not present when the accident occurred, but was only liable as the master of her servant and driver, Glenzinger. It was not alleged nor shown that she was personally and directly guilty of any trespass or was responsible by reason of anything which she personally did or omitted to do. Her responsibility even to the plaintiff did not arise from any act which was on her part morally wrong, but her liability was based on a legal principle that has become a part of the positive law of the Commonwealth that the negligence of a servant acting within the scope of his employment is imputed to the master. We agree with the learned judge of the court below that Mrs. Paugh's liability being purely derivative and because she and the driver are responsible to the plaintiff for one and the same act of negligence committed by the servant alone, both reason and justice require it to be held that Rodgers is not entitled to contribution since he has paid but one-half of the judgment.

. . . . .

In this connection it is to be observed that as between Mrs. Paugh and her driver she was entitled to recover from the driver the amount she was compelled to pay through his sole fault.

125 Pa.Super. 52, 53, 189 A. at 695–696.

In *Russell v. United States*, 113 F.Supp. 353 (M.D.Pa.1953), plaintiff brought suit for damages done to his home as a result of a collision between a tractor-trailer and a United States Post Office bus. The United States was sued as the owner of the bus and as the employer of its driver. Also sued were the driver of the tractor-trailer, the owner of the tractor and the owner of the trailer. In a decision by Judge Follmer,

the court found that Mr. Shank had operated the bus negligently and that Mr. Mitcheltree had negligently operated the tractor-trailer and that both were the proximate cause of the damage to the plaintiff's house when it was rammed by the tractor-trailer. The court also found that Mitcheltree was the employee of both Pitoniak, the owner of the tractor, and Mushroom, the owner of the trailer. The court, relying upon *Parker, supra* and *Fisher v. Diehl*, 156 Pa.Super. 476, 40 A.2d 912 (1945), resolved the issue of contribution among the joint tortfeasors as follows:

Since Mitcheltree, whose liability is primary, is the agent of the other third-party defendants, the right of contribution of the United States of America, which is governed by the law of Pennsylvania, is for one-half of the judgment.

. . . . .

The defendant, United States of America, is entitled to contribution from Theodore L. Mitcheltree, Cyril A. Pitoniak and the Mushroom Transportation Company, Inc., for one-half of the damage allotted to the plaintiffs in this case, to wit, $536.50.

113 F.Supp. at 356–357.

 The liability of the defendant, Bellmont, is a vicarious liability based on § 416. In a contribution action such as this, Bellmont's share of the liability is therefore identical to the share of Carr & Duff whom the jury found had committed the actual tort. Nationwide, Bellmont and Carr & Duff were found to have been jointly and severally liable for the death of George Baker. Had a tort action been successfully brought by Baker's estate, it would have been privileged to exact payment of the entire amount of damages from any one or more of the defendants. However, this is a suit for contribution and it is not the total number of defendants involved who could have been liable to the deceased's estate but the number of directly and primarily liable parties which determines the number of pro-rata shares. Only two parties were directly and primarily liable, Carr & Duff and Hinkle. Therefore liability for contribution

is divisible in only two parts, one part being based upon the negligence of Carr & Duff and the other part being based upon the negligence of Hinkle, the plaintiff's insured.

We therefore find that the total contribution to which Nationwide is entitled is $37,-500, one-half the amount it paid in settlement.

■ In the event the judgment herein is paid by Bellmont, it is entitled to recover the amount so paid from Carr & Duff. *Restatement (Second) of Torts*, § 416, Comment (c) states, ". . . the contractor who is employed to take the precautions is under a duty to indemnify his employer for any liability which the contractor's negligence in failure to take reasonably adequate precautions may bring upon him."

The rationale of that rule springs from the fact that one found liable under § 416 is deemed secondarily liable for the active negligence of the contractor who is considered primarily liable. As stated in *Ohio Cas. Ins. Co. v. Bank Bldg. and Equipment Corp.*, 300 F.Supp. 632, 635–636 (W.D.Pa. 1968):

[under § 416] liability is imposed upon the owner, not because of his own actions, but by operation of law. As such, the liability of the owner of the land is secondary to that of the primary tort-feasor. "But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily liable." *Builders Supply Co. v. McCabe*, 366 Pa. 322, 327, 328, 77 A.2d 368, 371, 24 A.L.R.2d 319.

The right to indemnity as between a tortfeasor secondarily and one primarily liable has long been recognized in Pennsylvania. *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951). *Globe Indemnity Co. v. Agway, Inc.*, 456 F.2d 472 (3d Cir. 1972). In *McCabe*, Justice Horace Stern, writing for the Pennsylvania Supreme Court, stated,

The right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence,—a doctrine which, indeed, is not recognized by the common law. . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. Secondarily liability exists, for example, where there is a relation of employer and employee, or principal and agent; if a tort is committed by the employee or the agent recovery may be had against the employer or the principal on the theory of respondeat superior, but the person primarily liable is the employee or agent who committed the tort, and the employer or principal may recover indemnity from him for the damages which he has been obliged to pay.

77 A.2d at 370 (citations omitted) (emphasis in original).

In addition the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act specifically states that it does not impair any rights to indemnity under existing law. 12 P.S. § 2087.

We find these principles applicable to the instant case. Bellmont, found liable pursuant to § 416, is secondarily liable for the death of George Baker. Carr & Duff, on the other hand, was one of the two parties whose *active* negligence caused the death.

■ A final comment on this issue is necessary before moving on to the next. In

denying Bellmont's motion for judgment n. o. v., we have been persuaded not only by the considerations heretofore discussed, but we have also considered what might result from the entry of a judgment n. o. v. in this situation. A determination that a defendant found vicariously liable in a proceeding brought pursuant to the Uniform Contribution Among Joint Tortfeasors Act should not have a judgment entered against it on the ground that in the same proceeding liability has been found against the party whose tortious acts gave rise to the vicarious liability, would produce a most inequitable result. Such a determination would leave the plaintiff with a judgment only against the actual tortfeasor and in many instances such a judgment might not be collectible. For instance in the situation wherein an employer is found to be vicariously liable for its employee, the plaintiff might be left with only an uncollectible judgment against the employee.

*Plaintiff's Motion for an Award of Interest.*

Plaintiff has moved this Court to award interest on the portion of the $75,000 settlement which represents the pro-rata shares of the other joint tortfeasors. *Marrazzo v. Scranton-Nehi Bottling Co.*, 438 Pa. 72, 263 A.2d 336 (1970). We have molded the verdict to require Bellmont and Carr & Duff to contribute to Nationwide one-half of the amount paid in settlement, or $37,500. In addition to this portion of the settlement, plaintiff seeks to recover interest on this amount from June 15, 1970, the date the settlement was paid to the estate of the deceased. Plaintiff contends that the jury's verdict establishes that Carr & Duff and Bellmont should have contributed to the settlement, and that equity and fairness mandate that the plaintiff, who was deprived of the use of the funds representing defendant's pro-rata share, should recover interest from the defendants who benefited by not having to pay their share during this six year period.

The recovery of interest by a settling joint tortfeasor was considered in *W. D. Rubright v. International Harvester Co.*,

358 F.Supp. 1388 (W.D.Pa.1973). In *Rubright*, Judge Scalera, after a detailed analysis of the Pennsylvania case law, concluded that the plaintiff in the case before him was not entitled to interest.

As detailed in *Rubright*, recovery under the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act has been characterized by the Pennsylvania Supreme Court as a recovery in assumpsit or contract rather than in tort. *Harger v. Caputo*, 420 Pa. 528, 218 A.2d 108 (1966).

Moreover, the right to recovery under the principles of contribution embodied in the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act is a right which

. . . has its foundation in, and is controlled by, the principles of equity and natural justice . . . .

The doctrine of contribution rests upon the principle that when the parties stand in aequali jure the law requires equality, which is equity, and one of them is not to be obliged to bear a common burden in ease of the rest. Thus, the doctrine is founded on the broad equitable maxim that equality is equity, and that he who receives a benefit must incur the burden.

The right of contribution is also explained as a quasi contractual right which arises by reason of an implied engagement on the part of each obligor to help bear the common burden. P.L.E., Contribution § 2.

The contribution action is clearly distinct from the tort out of which the right of contribution arose. As pointed out in *Rubright*, the Pennsylvania courts have viewed the right to contribution provided by the Uniform Contribution Among Joint Tortfeasors Act as a dual one—a right sounding in both equity and quasi contract. 358 F.Supp. at 1392.

The substantive law controlling the allowance of additional damages in the nature of interest for a breach of a quasi contractual duty or for the failure to perform an equitable duty is set forth in the Restatement of Contracts, § 337 and the

Restatement of Restitution, § 156, respectively.

Section 337 [2] permits the recovery of interest from the time of performance where the defendant has committed a breach of contract by failing to perform at a required time, if the value of such performance is stated in the contract or is ascertainable by mathematical calculation.

Section 156, upon which the court in *Rubright* relied and upon which this court shall rely, states

Subject to the rules stated in § 157, a person who has a duty to pay the value of a benefit which he has received, is also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution if, and only if:

(a) the benefit consisted of a definite sum of money, or

(b) the value of the benefit can be ascertained by mathematical calculation from the terms of an agreement between the parties or by established market prices, or

(c) payment of interest is required to avoid injustice.

These principles are equally applicable to breaches of equitable as well as quasi contractual duties. *Rubright* at 1394.

As applied to the instant case, the above concepts lead to a conclusion that plaintiff Nationwide, under the circumstances of this case, is entitled to interest. In making this award this court does not disturb the settled law of Pennsylvania that interest as such is not allowed in tort actions [3] on the theory that damages in tort are unliquidated. The action in this case is one sounding in quasi contract and equity, not tort. Here the amount recoverable was liquidated and agreed to have been reasonable.

It was stipulated by all the parties and the stipulation was read into the record at trial, that the plaintiff settled the tort case with the estate of the deceased for an amount which all parties agreed was reasonable at the time of settlement. The settlement of the tort action took place as that CASE neared trial.[4] (N.T. 1–45—51). The only question for the jury in this case was, therefore, whether the defendants were joint tortfeasors, an issue which they resolved in the affirmative.

**2.** Section 337 reads:

If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:

(a) Where the defendant commits a breach of a contract to pay a sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which the defendant may be entitled.

(b) Where the contract that is broken is of a kind not specified in Clause (a), interest may be allowed in the discretion of the Court, if justice requires it, on the amount that would have been just compensation if it had been paid when performance was due.

**3.** *McGonnell v. Pittsburgh Rys. Co.*, 234 Pa. 396, 83 A. 282 (1912).

**4.** In *Rubright*, the stipulation as to reasonableness took place immediately prior to the trial for contribution.

The determination of at what point in time an agreement as to reasonableness should attach was discussed in *Pennsylvania Railroad Co. v. Erie Avenue Warehouse Co.*, 206 F.Supp. 725, 726 (E.D.Pa.1962). There, Judge Van Dusen stressed the tense of the verb used by the parties in their stipulation to reasonableness of an amount paid in settlement of a tort action. The court stated:

At a pre-trial conference (incident to the trial of this third-party action) held December 15, 1969, defendant stipulated that "the amount paid in settlement * * * to wit, $75,000., was fair and reasonable" (N.T. 42 of Document No. 65a). See Pre-Trial Order (Document No. 54) and Report of Pre-Trial Conference (Document No. 51). In view of this stipulation using the past tense of the verb, namely "was," defendant agreed that the $75,000 was the fair and reasonable settlement amount in the past, namely, *when it was paid* and approved by the court on August 6, 1958, and not at the time of the pre-trial conference of December 15, 1959, or any later date. (emphasis added).

Nationwide has, therefore, met the requirements of the Pennsylvania Uniform Contribution Among Joint Tortfeasors Act, *supra,* and may enforce its right to contribution. It should also be noted that it was agreed by the parties that this court would mold the verdict and enter judgment. We will include in our judgment interest at six per cent (6%) on one-half of the settlement from June 15, 1970, the date of payment, to the date of judgment.

The award of interest in this case falls squarely within the provisions of the Restatement of Restitution, § 156. Under subsection (a) interest can be granted only when the sum due is definite. As demonstrated above, the sum due the plaintiff from the defendant joint tortfeasor was not only definite but considered by both parties to be reasonable. As a result, the award of interest falls within the scope of § 156(a).

This award additionally comes within § 156(c) where payment of interest is required to avoid injustice. The plaintiff paid the sum of $75,000 to the estate of the deceased on June 15, 1970 in return for a release running in favor of all parties. Since that time the plaintiff has been without the benefit of those funds while defendants Bellmont and Carr & Duff have benefited from the plaintiff's payment of their portion of the settlement. In *Pennsylvania Railroad Co. v. Erie Avenue Warehouse Co.,* 206 F.Supp. 725, 726 (E.D.Pa.1962), wherein the Court of Appeals had held that a defendant and a third-party defendant were equally liable and that the defendant who had settled in full was entitled to interest on one-half of the settlement, Judge Van Dusen, who was the trial judge, in making his finding that interest was due from the date of payment of settlement stated that, "Strong policy reasons favor the payment of interest to a party who has advanced money in order to settle the principal action on a fair and reasonable basis."

We shall, therefore, award plaintiff interest on defendant's pro-rata share of the settlement from the date the plaintiff paid the settlement, at which time plaintiff's right to contribution arose.

*Carr & Duff's Motion for a New Trial.*

 At the close of the plaintiff's case, PECO moved for a directed verdict in connection with plaintiff's claim that PECO was negligent and a joint tortfeasor. The plaintiff did not oppose this motion and the Court granted it. At the close of all the evidence PECO moved for a directed verdict in connection with the cross-claim for negligence filed against it by Carr & Duff. The Court also granted this motion. Carr & Duff now contends that the Court erred in making these findings.

The Court granted these motions after applying the standard set forth by the United States Supreme Court in *Brady v. Southern Railroad,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943):

> When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by . . . directed verdict . . . . .

In the instant case, without weighing the credibility of the witnesses, and viewing the evidence in the light most favorable to the plaintiff and Carr & Duff, the only verdict which the jury could have reasonably found would have been for PECO.

Carr & Duff contends that it should not be necessary to prove that PECO had notice and knowledge that a crane would be used underneath the power lines. We disagree.

The law in Pennsylvania regarding this issue is clear. In *Stark v. Lehigh Foundries,* 388 Pa. 1, 130 A.2d 123 (1957), the jury found the possessor of the land and the electric company liable for the injuries sustained by plaintiff when the crane on which he was working came in contact with a power line. While affirming the judgment as to the possessor, the Court entered a judgment n. o. v. for the electric company, holding that the plaintiff had not proved that the electric company had actual notice of the crane's use underneath the power lines, stating

Where a supplier of electricity has installed its high tension lines in a safe and proper manner on the land of another and has neither knowledge nor notice that the possessor of the land is conducting an activity thereon which makes the line dangerous to people working on the land, it is not subject to liability for the electrocution of a workman resulting from this activity. 388 Pa. at 12–13, 130 A.2d at 130–31.

In *Dunnaway v. Duquesne Light Co.*, 423 F.2d 66 (3d Cir. 1970), the court held that an electric company's knowledge of the use of cranes and other equipment in the general construction area is insufficient to charge the electric company with notice that a crane would be used under its wires.

In *Reed v. Duquesne Light Co.*, 1946, 354 Pa. 325, 47 A.2d 136, and *Stark v. Lehigh Foundries, Inc.*, 1957, 388 Pa. 1, 130 A.2d 123, the Supreme Court of Pennsylvania held that such notice could not be imputed from an electric company's knowledge of the use of cranes in the general area of the high tension wires. In those cases as in the present case, "the position of the crane on the day of the accident immediately underneath the power line was not permanent." *Stark v. Lehigh Foundries, Inc.*, 388 Pa. at 14, 130 A.2d at 131. A reasonable periodic inspection by the electric company would not have revealed any crane under or dangerously close to the lines unless the inspection happened to occur the day of the accident. 423 F.2d at 69–70.

There was no evidence in the instant case that PECO had any knowledge that a crane was being used under its wires. Although George Mittleman, the construction superintendent on the project, testified that a crane was used on several occasions (N.T. 2–28) and that PECO was aware that an apartment building four stories high was to be constructed at the site (N.T. 1–63), there was no testimony that PECO had actual knowledge as to the position and use of the crane on the day of the accident.

Carr & Duff argue that there was evidence that PECO was negligent in moving its transformer and energizing the wires, citing *Meehan v. Philadelphia Electric Company*, 424 Pa. 51, 225 A.2d 900 (1967). In *Meehan*, there was affirmative evidence by plaintiff's expert that the conduct of the electric company fell below the standard of care required under the circumstances. There is no such evidence in this case. Harold Carr, the president of Carr & Duff, who testified as both an expert and a fact witness, testified that PECO did a "fine job", that it did the work in a proper fashion, and that it did the job and energized the system in conformity with the proper standards that it always used. (N.T. 4–154). Joseph Warren, an expert witness called by Carr & Duff, testified that PECO did nothing wrong in energizing the electric line and that it was a perfectly proper thing to do. (N.T. 4–62). The Court did not err in granting PECO's motion for a directed verdict on plaintiff's claim and on the cross-claim of Carr & Duff for the reasons heretofore stated.

While we have not discussed every contention that was raised, we have, however, reviewed the record and considered all of the grounds alleged by the parties and we hold that none of them, either singly or collectively, has sufficient substance to merit any further discussion.

Accordingly, the court will enter orders denying Bellmont's motion for judgment n. o. v., granting plaintiff Nationwide's motion for an award of interest, and denying Carr & Duff's motion for a new trial and/or judgment n. o. v. In addition, the court will enter a judgment order in favor of plaintiff Nationwide and against defendants Bellmont and Carr & Duff in the sum of $54,279.96 (which sum includes interest in the amount of $16,779.96) together with costs and such judgment order will provide that a right of indemnity exists in favor of defendant Bellmont against defendant Carr & Duff.