OLSZEWSKI, Judge,
concurring and dissenting:
I concur in so much of the majority opinion as dismisses the counts based on § 411 of the RESTATEMENT (SECOND) TORTS, the third-party beneficiary contract theory and the allegation of personal negligence by the defendants. I wholeheartedly agree that the duty imposed by § 411 does not run to the benefit of an employee of the independent contractor who was negligently selected by the property owner. Further, I agree that Mentzer has not established *597 personal negligence on the part of the defendants nor third-party beneficiary contract status. I vigorously dissent from the majority’s disposition of the count based upon §§ 416 and 427 of the RESTATEMENT (SECOND) TORTS.
Initially, I believe the analytical model first announced in Marshall v. SEPTA, 587 F.Supp. 258 (1984), and adopted by this court in Ortiz v. Ra-El Development Corp., 365 Pa.Super. 48, 528 A.2d 1355, alloc. denied, 517 Pa. 608, 536 A.2d 1332 (1987) is seriously flawed. The initial inquiry is proper. The risk and need to take special precautions must be foreseeable at the time of contracting. Ortiz, supra, 365 Pa.Superior Ct. at 52-54, 528 A.2d at 1358. The flaw lies in the second inquiry which requires that the risk be substantially out of the ordinary before it can be considered a peculiar risk within the meaning of the sections. I believe this prong of the test flies in the face of the language of the sections and the comments explaining them.
The majority states that “[t]here is nothing about the existence of a stairwell opening at a two-story building construction site that presents a peculiar risk to those working on the building. The risk of falling through such an opening is an incident of such work[1] and the customary procedure for protecting such an opening to guard against falling is well within the normal expertise of a qualified contractor.” At 592-593. The majority also states that the failure of the contractor to protect against this risk is “collateral negligence” which does not come within the scope of the sections. Id., citing Marshall, supra. I am unable to reconcile this characterization of the risk as beyond the scope of the sections with the following language of the sections:
*598 One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.
RESTATEMENT (SECOND) TORTS, § 416.
One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor’s failure to take reasonable precautions against such danger.
RESTATEMENT (SECOND) TORTS, § 427 (emphasis added).
I agree that the risk of a serious fall is incident to construction work. It is precisely this type of risk which is covered by these sections: a risk common in the work to be done but “differing from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community.” RESTATEMENT (SECOND) TORTS, § 416, comment (d). The work need not be extra-hazardous, abnormally dangerous or involve a very high degree of risk. Id. “It is sufficient that work of any kind involves a risk, recognizable in advance, of physical harm to others which is inherent in the work itself, or normally to be expected in the ordinary course of the usual or prescribed way of doing it ...” RESTATEMENT (SECOND) TORTS, § 427, comment (b).
Thus, the language of the sections and the comments indicate that it is a risk inherent in the work which is not commonly encountered in the community which is within the scope of these sections. A two-story fall at a construe *599 tion site is just such a risk. The flaw in the approach employed by the majority is an unnecessary limitation of the population of events by which peculiarity of risk is measured. Peculiarity of risk must be measured by the frequency of occurrence in the total community, not frequency of occurrence in the specific work environment at issue. It is not enough to say that the risk of falling is inherent to construction work and so not substantially out-of-the ordinary. The proper formulation is that the risk is inherent to the work but not commonly encountered in the community in general. A risk need not be substantially out-of-the-ordinary in a specific work environment to be substantially out-of-the-ordinary to the community in general.
Further, I cannot agree that this is “collateral negligence” by the contractor. This was a failure to take precautions against the very risk which triggers the applicability of the sections. “Collateral negligence” is that which involves no peculiar risk. RESTATEMENT (SECOND) TORTS § 427, comment (d). See also, RESTATEMENT (SECOND) TORTS § 416, Illustrations 1 and 2 (imposing liability on owner for contractor’s failure to take precaution to abate risk known to be inherent in work to be performed). This failure to adequately protect the opening was “intimately connected with the work authorized and as such reasonably likely from its nature.” McDonough v. United States Steel Corp., 228 Pa.Super. 268, 276, 324 A.2d 542, 546 (1974) (citation omitted).
The majority holds that the owner “shifted to the contractor the responsibility to take precisely this kind of normal precaution.” At 593 (emphasis in original). The Restatement is clear, however, that it is just this risk which the owner cannot shift to the contractor: “[T]he fact that the contract contains express stipulations for the taking of adequate precautions and that the contractor agrees to assume all liability for harm caused by his failure to do so, does not relieve the employer from the liability stated in this Section.” RESTATEMENT (SECOND) TORTS § 416, comment (e). “The duties defined in these sections [refer *600 ring to §§ 416, 427] are said to be ‘non-delegable’; they impose vicarious liability for the negligence of an independent contractor upon one who employs the contractor to do work involving heightened risks of physical harm to third parties.” Colloi v. Philadelphia Electric Co., 332 Pa.Super. 284, 296, 481 A.2d 616, 622 (1984) (citations omitted). Thus, the risk which was present at the construction site is clearly within the duty imposed by the sections at issue.
Moreover, I believe the test employed is irreconcilable with Pennsylvania precedent. In Colloi, supra, it was held that evidence indicating that an excavation was performed at an electrical substation without precautions to prevent contact with power transmission lines was sufficient to allow the case to go to a jury under § 416. Not so under the majority’s test, because contact with the electrical lines would be a risk inherent to the excavation at the substation and the failure to provide precautions would be collateral negligence in the operational details of the work. In Heath v. Huth Engineers, Inc., 279 Pa.Super. 90, 420 A.2d 758 (1980), an owner was held liable under § 416 for the death of a contractor’s employee killed in a trench collapse when the trench was not adequately braced or shored in violation of safety regulations. Applying the majority’s test, recovery would have been disallowed because collapses are a risk inherent to trench digging and the failure to properly brace or shore the trench was collateral negligence in the operational details of the work. Finally, in McDonough, supra, recovery against the owner was allowed under § 416 where an employee of the contractor was killed when his vehicle slipped off the edge of an ore pile due to insufficient lighting provided by the contractor. Again, the majority’s test would dictate a contrary result as the evidence established that the edge of the ore pile often shifted due to sagging and slippage creating an inherent risk and the failure to provide lighting would be classified collateral negligence. Accordingly, I must disagree with the formulation employed by the majority here.
Philosophical differences with the majority as to the measurement of the peculiarity of the risk at issue aside, I *601 believe that the procedural posture of this case precludes the grant of summary judgment. The determination of what is and is not a peculiar risk is a mixed question of law and fact. While it is true that this determination may be made by the trial judge in clear cases, the absence of required safety precautions creates a situation where reasonable minds may differ. See, McDonough, supra, 228 Pa.Super. at 276 n. 6, 324 A.2d at 546 n. 6, and cases cited therein. Here it was undisputed that there were no toe-boards, railings or covering on the stairwell at the time of the fall. Thus, required safety precautions were lacking and reasonable minds may differ as to whether or not a peculiar risk was present. Under these circumstances, the determination was for the jury not the trial judge.
The majority expresses its concern that the scope of the exceptions to the general rule outlined in § 416 and § 427 must be circumscribed to prevent the exceptions from emasculating the rule. Similarly, I believe that the exceptions must be given force where applicable lest they be swallowed by the general rule and so rendered “not worth a Continental.” [2] I respectfully dissent.

. I note an apparent inconsistency with this characterization of the risk as inherent to construction with the majority’s statement of the general rule: “The owner relinquishes control to the contractor and should not be held liable for harm resulting from unforeseen risks arising from the ordinary negligence of the contractor.” At 590 (emphasis added). If the risk is inherent to the work commissioned by the owner, it can hardly be said to be unforeseen.

. C. Funk, A Hog on Ice & Other Curious Expressions, p. 172 (1948).