EDNA H. MCCABE et al., Plaintiffs, v. CENTURY THEATRES, INC., Defendant; EVA ROHDE et al., as Coexecutors of ADOLPH ROHDE, Deceased, Respondents; GRUPENEL REALTY CORP. et al., Appellants.

Second Department, March 14, 1966.

*Terhune, Gibbons & Mulvehill (James M. McLaughlin, Jr.,* of counsel), for appellants.

*Schaffner & Minion (Thomas Grimes, Thomas J. Walsh* and *Robert J. Mettalia* of counsel), for respondents.

HOPKINS, J.   Following our affirmance of the judgment recovered by the plaintiffs (20 A D 2d 625), the appellants Grupenel Realty Corp. (hereafter called "Grupenel") and Queens Park Operating Corp. (hereafter called "Queens Park") fell into a dispute with the respondents Eva Rohde and August K. Rohde, as executors under the last will and testament of Adolph Rohde, deceased (hereafter collectively called "Rohde"), concerning the relative amounts of contribution to be made by them as joint tort-feasors.   The position of Grupenel and Queens Park (represented by one firm of attorneys at the trial and on this appeal) was that they together should pay one half of the judgment; on the other hand, it was the position of Rohde that Grupenel and Queens Park together should pay two thirds of the judgment.

In order to end the accrual of interest, Grupenel and Queens Park paid two thirds of the amount of the judgment and Rohde paid the remaining third.   Grupenel and Queens Park then moved pursuant to CPLR 1401 for an order allowing the entry

of a judgment against Rohde for the difference between one half and one third of the judgment — $6,539.43. That motion was denied by Special Term.

Read literally, CPLR 1401 gives a remedy to a joint tort-feasor only when he has paid more than his "pro rata" share of the judgment; but the provision is not interpreted in a strict arithmetical sense. Rather, in applying the right of contribution, the whole pattern of the litigation out of which the judgment was rendered is considered and the relative duties of the tort-feasors toward the injured party are assessed. The process is essentially equitable and not mathematical (cf. *Wold* v. *Grozalsky,* 277 N. Y. 364, 366–367; *Bundy* v. *City of New York,* 23 A D 2d 392, 395).

We turn, then, to the facts found to create the liability to the plaintiffs. The plaintiff wife stumbled over opened cellar doors in a sidewalk and fell into the basement below. The doors had been opened by the testate Rohde in order to ventilate the basement used by him as an adjunct to a retail confectionery store operated by him at the street level. The store was part of the premises owned by Grupenel and leased to Queens Park. Queens Park and Grupenel were wholly owned subsidiaries of Century Theatres, Inc.

Queens Park had originally subleased the store space to one Meyer. Thereafter, Meyer had assigned his rights under the sublease to Rohde with the permission of Queens Park. Although the underlying proof is somewhat complicated,[1] in essence Grupenel was the owner, Queens Park the tenant and Rohde the subtenant of the store at the time that the injury to the plaintiff wife occurred. Although Rohde's sublease apparently did not include the basement below the store, it is undisputed that he used the basement and was using it at the time of the occurrence of the injury.

At the trial plaintiffs' theory was that Rohde was liable as the person who opened the cellar doors and left them open in a dangerous condition to pedestrians and as a person in possession of the doors and the basement; that Queens Park was liable as the sublandlord under a sublease with Rohde which provided for its right to enter and examine the premises and make repairs; and that Grupenel was liable as owner possessed of the right, under a lease with Queens Park, to enter and make inspections. The trial court charged the jury that a duty was placed on the

1. Queens Park had obtained its master lease from Floralbelle Amusement Corp., which later transferred title to Grupenel. Although the term of the master lease had expired at the time of the accident, Grupenel allowed Queens Park to continue its possession under the provisions of the lease with Floralbelle.

defendants to use reasonable care to make the sidewalk reasonably safe for pedestrians; and it charged that such a duty rested on Rohde as a user of the opening in the sidewalk and on Grupenel and Queens Park in the event that they '' either separately or jointly retained sufficient control of the premises to allow alterations or changes which would control or affect the safety to the public ''.[2]

The jury's verdict in favor of the plaintiffs necessarily implies that the appellants and the respondents' testate did not exercise reasonable care and that the appellants '' either separately or jointly '' retained a measure of control over the basement and the cellar doors. The trial court's dismissal of cross complaints by Grupenel and Queens Park against Rohde, which was affirmed by us, implies that all were guilty of active negligence.

Although a tort-feasor is precluded by a finding of active negligence from securing indemnity against other tort-feasors jointly liable with him and actively negligent, the right of contribution is not barred by the fact that all are guilty of active negligence. A relationship of a derivative or vicarious character between the tort-feasors need not be demonstrated (cf. *Lyons* v. *Provencial,* 20 A D 2d 875, affd. 15 N Y 2d 1006; *Bundy* v. *City of New York,* 23 A D 2d 392, *supra*) and the shares of the payment of the judgment are determined by an analysis of the duties owed to the injured party in the situation out of which the injury was incurred and the balancing of the equities inherent in the situation.

The wrong committed by Rohde was the act of raising the doors and leaving them open — a condition from which it could reasonably be foreseen that an injury might ensue. The wrong committed by Grupenel and Queens Park was the failure to make proper inspections and repairs of an opening in a sidewalk which could reasonably be foreseen to result in an injury. Grupenel's and Queens Park's duties, though arising from different instruments, were of an identical content; and their failure to perform the duties was an identical breach. Moreover, Grupenel and Queens Park were subsidiaries of the same parent, were represented, as the proof showed at the trial, by the same employees and were represented by the same attorneys. Their

---

2. The court's charge reflected the rule that a landlord, even though out of possession, may be liable to a pedestrian injured while using the sidewalk from a dangerous condition known or which should have been known by the landlord, if the landlord has covenanted to make repairs (*Appel* v. *Muller,* 262 N. Y. 278, 280), or has retained a measure of occupation and control of the premises (*De Clara* v. *Barber S. S. Lines,* 309 N. Y. 620, 628).

interests and their positions were for all purposes the same. Except for reasons of corporate convenience, either could have executed the functions of the other.

Thus, the injury to the plaintiffs was produced by two distinct causes; the proportion of the shares of the payment of the judgment should be fixed between the perpetrators of the causes not per capita but per stirpes. Both from the nature of the duties cast on them and the sense of the extrinsic equities, the burden of the loss should be equally divided between Rohde as one prime actor and Grupenel and Queens Park as the other. Accordingly, Rohde should pay one half of the judgment and Grupenel and Queens Park together the other half.

The order should be reversed, on the law and the facts, and the appellants' motion granted.

UGHETTA, Acting P. J., CHRIST, BRENNAN and HILL, JJ., concur.

Order reversed, on the law and the facts, without costs; motion granted; and judgment directed to be entered in favor of appellants against said executors in the amount of $6,539.43, with interest from the date of appellants' excess payment.