**CHAMPION MOBILE HOMES,**
**Appellant,**

v.

**Don RASMUSSEN and Rahmberg Mobile Homes, Inc., Appellees.**

**No. 1021.**

Court of Civil Appeals of Texas, Tyler.

June 23, 1977.

Rehearing Denied July 14, 1977.

David Stephenson, Clark, Thornton & Summers, San Antonio, for appellant.

Jerry A. Gibson, Wiley, Plunkett, Gibson & Allen, Daniel R. Rutherford, San Antonio, Lawrence J. Madigan, Moriarty & Madigan, Houston, for appellees.

MOORE, Justice.

This is a products liability case which also involves the right of contribution or indemnity between a retailer and a manufacturer. In December 1971 the plaintiff, Don Rasmussen, purchased a new mobile home from Rahmberg Mobile Homes, Inc. (Rahmberg), which had been manufactured by Champion Mobile Homes (Champion). The mobile home was destroyed by fire on March 13, 1972. The plaintiff instituted suit against Champion and Rahmberg, the retailer, alleging that the fire was caused by the defective installation of the electrical wiring system in the mobile home. Plaintiff alleged a breach of warranty and further alleged that the mobile home was defective and dangerous. He sought to impose liability under the doctrine of strict liability for placing a defectively manufactured product into the stream of commerce. Plaintiff further alleged that Rahmberg was guilty of negligence in failing to inspect and repair the mobile home after having been notified by the plaintiff that the electrical system was not functioning properly. By way of a cross-action Champion sought indemnity or, in the alternative, contribution from Rahmberg in the event the plaintiff recovered a judgment and Rahmberg likewise sought contribution or indemnity from Champion in the event the plaintiff recovered a judgment against it. Trial was before a jury. In response to the special issues the jury found that (1) the electrical system on the mobile home was defective at the time it left the hands of Champion; (2) the electrical system was defective at the time the mobile home was sold to the plaintiff by Rahmberg; (3) such defect was a producing cause of the fire and destroyed the mobile home; (4) Rahmberg through its agents, servants and employees was (a) negligent in failing to inspect and (b) negligent in failing to repair the mobile home, each of which acts of negligence was a proximate cause of the fire; and (5) the market value of the plaintiff's personal property destroyed by the fire was $12,250.00. It was stipulated that the plaintiff's loss, caused by reason of the destruction of the mobile home itself, amounted to the sum of $4,300.00. Pursuant to the jury's verdict and the stipulation, the trial court entered judgment in favor of the plaintiff against both Champion and Rahmberg, jointly and severally, for the sum of $16,550.00. The judgment further decreed full indemnity in favor of Rahmberg over against Champion. From such disposition Champion alone perfected this appeal.

We affirm.

Under its first point, Champion urges that the trial court erred in admitting into evidence, over its objection, an unsigned copy of plaintiff's answer to a certain interrogatory which Champion had propounded to the plaintiff requesting the plaintiff to list the items of personal property destroyed by the fire together with the value thereof. The interrogatory in question was propounded under Rule 168, Texas Rules of Civil Procedure. Plaintiff responded with a verified list containing several hundred items. After testifying on direct examination that he and his family had lost all of their clothing, jewelry and other personal effects as a result of the fire and that shortly after the fire he and his wife compiled a list of all the items destroyed along with the fair-market value of each item (the total of which was $16,438.50), plaintiff was then handed an unsigned, unsworn copy of his reply to the above-mentioned interrogatory and was asked to identify it. He testified that it was a list of the contents of the household and personal effects destroyed in the fire. Counsel for appellant, Champion, registered no objection to

the foregoing testimony. When counsel for the plaintiff offered the same as an exhibit, counsel for Champion objected on the ground that no proper predicate had been laid in that it had not been established that the list of items was prepared by the plaintiff from a personal inspection of the property. Thereupon the plaintiff testified that the list of items on the exhibit was a typewritten list of an original list which he and his wife had prepared soon after the fire. Champion did not re-urge its objection that the proper predicate had not been laid, but then objected to the exhibit on the grounds that (1) it was an attempt to reduce oral testimony to writing and (2) the list was not admissible because the items listed thereon were in response to the interrogatory theretofore propounded to the plaintiff and was therefore self-serving. The objection was overruled and the instrument was admitted into evidence.

Champion argues that the trial court's ruling constituted a violation of Rule 168, Texas Rules of Civil Procedure, prohibiting the answering party from using his answers to an interrogatory in his own behalf. The complaint here bears little resemblance to the grounds of its objection made in the trial court. Nowhere in the objection did Champion object on the ground that the exhibit was violative of Rule 168. It now appears that Champion is attempting to add to or broaden its objection so as to encompass what might have been a proper objection if made in the trial court.

■ The general rule is that objections which are not made are waived. Specific objections which have been overruled by the trial court are effective as grounds for complaint on appeal only to the extent of the grounds named in the objection. No new grounds of objection may be asserted on appeal. *Eubanks v. Winn,* 469 S.W.2d 292, 296 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n. r. e.); Rule 373, Tex.R.Civ.P.; 1 McCormick & Ray, Texas Evidence, sec. 22–26 (2d Ed. 1956). Having failed to properly preserve an objection on the ground that the exhibit offered was violative of Rule 168, Champion waived its

right to complain. In any event, we do not believe that the admission of the unsworn, unsigned copy of the answer to the interrogatory would constitute a violation of Rule 168. The rule certainly does not prohibit the answering party from offering proof of the same facts found in his answer where proof of such facts is necessary to establish his cause of action. The rule merely prohibits the answering party from using his own sworn answers in his own behalf.

■ Champion further contends that the trial court erred in admitting the instrument because the written list prepared by the plaintiff amounted to a self-serving declaration. We find no merit in this contention. The method followed by the plaintiff in presenting his evidence in this manner is not the approved method. The proper method would have been for plaintiff to have presented his evidence item by item using, if necessary, the itemized list as a memorandum to refresh his memory. However, in view of the testimony of the plaintiff concerning his personal knowledge of each item and the value thereof, we do not believe that the court abused its discretion in allowing the introduction of such an itemized list over the objection that it was self-serving. *Dodson Bros., Builders v. Adkins,* 275 S.W.2d 143, 145 (Tex.Civ.App.—El Paso 1954, no writ); *Franklin Fire Ins. Co. v. Orr,* 36 S.W.2d 576, 577 (Tex.Civ.App.—Texarkana 1931, writ dism'd); 82 A.L.R.2d 582. It must be remembered that at the time the trial court admitted the exhibit into evidence, the plaintiff had already testified, without objection, as to the general category of the items destroyed by the fire and that the reasonable value of all items totaled $16,438.50. Thus, insofar as the value is concerned, the exhibit in question was merely cumulative of the plaintiff's previous oral testimony. In view of the fact that Champion had an opportunity to cross-examine the plaintiff as to each item and did so with regard to many items, we think the error, if any, in admitting the instrument was harmless. Rule 434, Tex.R.Civ.P. Appellant's first point is overruled.

Under the second point of error, Champion contends that the trial court erred in granting Rahmberg a judgment for indemnity over against it and erred in refusing to grant Champion a judgment of contribution against Rahmberg. We are not in accord with this proposition.

Since the right of contribution or indemnity depends on the facts, a statement is necessary. The record reveals that Rahmberg purchased the mobile home in question from the manufacturer, Champion Mobile Homes, Inc., who warranted the electrical system to be in accordance with American National Standard Institute A1191.1. After testifying that Rahmberg Mobile Homes, Inc., had no written contract with Champion to inspect or repair the mobile homes manufactured by it, Gene Rahmberg, owner of Rahmberg Mobile Homes, Inc., gave the following testimony explaining the arrangement between the parties with regard to repairs:

"Q. This Kidder bill, some thirteen months after the sale, do you call and get permission before you send that service man out to do that warranty work?

"A. Not normally. The factory agreements are nothing in writing, but it's just a very good agreement with them.

"Q. Okay. So that in this particular situation if, for example, Mr. Rasmussen called you and said thus and so, and in your mind you feel like that may be a warranty claim, you have the authority to call out a service man, do the repair work, send the bill to the factory and they pay it?

"A. Right.

"Q. And that's what happened in this instance here?

"A. That's correct."

The foregoing testimony is undisputed. The servicemen sent by Rahmberg were not regular employees of Rahmberg but were independent servicemen engaged in the electrical business.

Rahmberg sold the mobile home to the plaintiff on December 23, 1970. Shortly after he and his family had moved into the mobile home, they began to have trouble with the electrical system. The lights would occasionally flicker and dim for no apparent reason. Plaintiff complained to Rahmberg on several occasions. On each occasion Rahmberg would call a serviceman to check and make the necessary repairs. Although the evidence shows that some minor repairs were made by various repairmen sent by Rahmberg, they were never able to determine why the lights would flicker and dim. The problem continued until March 10, 1972, when the plaintiff and his family locked their home and left on a trip. When they returned several days later, they found that their home had been destroyed by fire.

According to the testimony of George Green, Jr., a mechanical engineer, the fire started because a metal staple used in hanging the inside paneling had rubbed against and finally penetrated the electrical wire running immediately behind the paneling. The penetration of the staple caused an electrical short which in turn caused an electrical spark or intense heat sufficient to ignite the paneling. He testified that the staple was able to penetrate the electrical wiring because the manufacturer failed to place a metal plate over the notches in the wooden studs through which the electrical wiring was placed and that the failure to place such metal plates over the wires was in violation of the rules promulgated by the National Fire Protection Association, as well as the American National Standard Institute. He further testified that if the metal plates had been installed, they would have caused the staples to bend or spread out and would have prevented the staples from penetrating far enough to reach the electrical wire. He testified that the failure to install the metal plates constituted a latent defect and that such a defect could only be detected by the use of a magnetic sensing device which would show the location of the wiring so that an electrician could trace the wires and find and remove any staples that were placed near the wire. He testified that the failure of the manufacturer to install the metal plates, when

coupled with the fact that the staples eventually penetrated the electrical wire, was the producing cause of the fire. Finally, Green testified that he found no evidence that the fire was caused by any other source other than the heated staple.

There is no evidence that any of the servicemen sent by Rahmberg ever made any electrical repairs in the area where the fire started and there is no evidence that any of the minor repairs made by them contributed in any way to cause the fire. As stated, the jury found that the electrical system was defective both at the time it left Champion's factory and at the time the mobile home was sold to the plaintiff and that the electrical defect was a producing cause of the fire. The jury also found that the agents, servants or employees of Rahmberg were negligent in failing to properly inspect and repair the electrical defect and that such was a proximate cause of the fire.

Except for Champion's complaint with regard to the admissibility of certain evidence as discussed in the first point, neither Champion nor Rahmberg complains of the judgment in favor of the plaintiff, Rasmussen, holding them liable as joint tortfeasors. As between themselves they each simply attempt to shift the liability to the other. Rahmberg argues that the judgment in its favor for full indemnity was proper because Champion breached a duty owed to it by placing the mobile home in commerce with a dangerous electrical defect. Champion maintains that Rahmberg breached a duty owed to it by failing to properly inspect and repair the defect and that it is therefore entitled to contribution from Rahmberg under the provisions of Art. 2212, Tex.Rev.Civ.Stat.Ann., which reads, in part, as follows:

"Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. . . ."

■ While the foregoing statute confers a right of contribution between tortfeasors, it will be noted from a careful reading thereof that the statute does not apply in situations where a recovery of contribution or indemnity was permitted at the common law. *Wheeler v. Glazer,* 137 Tex. 341, 153 S.W.2d 449 (1941); see also 140 A.L.R. 1301. Thus, in order for Champion to claim the benefits of the statute, Champion had the burden of establishing that Rahmberg would not have been entitled to contribution or indemnity under the common law.

■ Generally speaking, at common law, there is no right to contribution or indemnity among joint tortfeasors. That rule, however, is subject to many exceptions and its operation has been confined within very narrow limits. *Oats v. Dublin Nat'l Bank,* 127 Tex. 2, 90 S.W.2d 824, 829 (1936). One of the recognized exceptions to the common law rule that there may be no contribution or indemnity between wrongdoers is the situation where the injury forming the basis for the judgment against joint tortfeasors results from a violation of a duty which one of the joint tortfeasors owes to the other, the latter at common law being entitled to contribution or indemnity from the former. *Strakos v. Gehring,* 360 S.W.2d 787 (Tex.1962); *Humble Oil and Refining Co. v. Martin,* 148 Tex. 175, 222 S.W.2d 995 (1949); *Austin Road Co. v. Pope,* 147 Tex. 430, 216 S.W.2d 563 (1949); *Wheeler v. Glazer, supra;* Hodges, Contribution and Indemnity Among Tortfeasors, 26 Texas L.Rev. 150 (1947).

■ In order to determine whether the loss should be shifted from one tortfeasor to another, the proper approach is to consider the one seeking indemnity as though he were a plaintiff suing the other in tort, and then to determine whether one such as plaintiff, though guilty of a wrong against a third person, is nevertheless entitled to

recover against his co-tortfeasor. *Austin Road Co. v. Pope, supra; Heil Co. v. Grant,* 534 S.W.2d 916 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.). As between the joint tortfeasors, the alleged tort of the indemnitor against the indemnitee is distinct and independent from any tort committed by the indemnitor and indemnitee against the injured third party. Consequently, if under the facts in the present case, Champion violated a duty owed to Rahmberg and Rahmberg violated no duty owed to Champion, then Rahmberg would be entitled to full indemnity and the judgment of the trial court must be sustained. If, on the other hand, the facts show that each codefendant violated a duty owed to the other, then each must bear its proportionate burden under the provisions of Article 2212, supra, and Champion would be entitled to contribution.

■ Champion does not challenge the finding that the electrical system was defective when it left its factory, nor does Champion challenge the finding that a manufacturing defect was a producing cause of the fire which resulted in Rahmberg's liability to the plaintiff.

The Restatement provides that where a person (such as a manufacturer) has supplied to another (such as a dealer) a chattel which, because of the supplier's negligence or other fault, is dangerously defective for the use for which it is supplied, and both the supplier and the second party have become liable in tort to a third person injured by such use, the supplier or manufacturer is under a duty to indemnify the second party (dealer) for expenditures properly made in discharge of the third person's claim. Restatement (Second) of Restitution, sec. 93(1) (1937).

Consequently as between Champion and Rahmberg, Champion must be held to have breached a duty toward Rahmberg. Under these circumstances, Rahmberg would be entitled to full indemnity unless Rahmberg breached a duty owed to Champion. Champion argues that Rahmberg breached a duty to it by failing to properly inspect and repair the electrical defect.

The evidence shows that the defect created by Champion was a latent defect. It was located at a point between the walls of the mobile home and was such that it could not have been discovered except by extensive tests using specialized equipment or by removing the paneling.

■ We have found no Texas cases, and have been cited none, holding that a vendor has a duty to inspect or test a product manufactured by another for latent defects either before or after it has been sold to a third party. The weight of authority seems to be that the vendor has no such burden. *Roberts v. Richland Mfg. Co.,* 260 F.Supp. 274 (W.D.Mich.1966), citing 2 Frumer & Friedman, Products Liability sec. 1803 (1)(a); Restatement (Second) Torts sec. 402 (1965). See 6 A.L.R.3rd 12. Accordingly, we hold that the vendor owes no duty to the manufacturer to inspect for latent defects. It therefore follows that Rahmberg breached no duty toward Champion in this respect.

Champion argues that Rahmberg is not entitled to indemnity because Rahmberg negligently breached a contractual obligation owed to it by failing to inspect and repair the mobile home. In this connection, Champion contends that since Rahmberg agreed to call out a serviceman when a customer's complaint appeared to involve a warranty defect, Rahmberg agreed to undertake to inspect and to make the necessary repairs. Based on this premise Champion argues that under the doctrine of respondeat superior, Rahmberg was charged with the negligence of the servicemen and therefore Rahmberg breached a duty to Champion by negligent nonperformance of the contract. We find no merit in this contention.

In the first place, we find no evidence that Rahmberg promised to inspect and repair warranty defects created by Champion. The agreement was that when a customer complained of what appeared to be a warranty defect, Rahmberg was authorized to "call out a serviceman" to make the repairs and send Champion the bill. Under this

agreement, it appears that Rahmberg agreed only to act as a sub-agent for Champion for the limited purpose of "calling out a serviceman." Thus, we do not believe the evidence raises an issue on the question of whether Rahmberg contracted to inspect and repair. Even if the issue was raised there is no finding that Rahmberg entered into a contract to that effect. In the absence of a contractual obligation, Rahmberg had no duty to inspect and repair. Since breach of a contract would constitute independent grounds of a defense to Rahmberg's claim for indemnity, it was incumbent on Champion to request and obtain jury findings establishing a contractual relationship. Having failed to request or obtain findings with regard to the alleged contract, such defense was waived. Rule 279, Tex.R.Civ.P.; *Wichita Falls & O. Ry. v. Pepper,* 134 Tex. 360, 135 S.W.2d 79 (1940); *Enlow v. Brown,* 357 S.W.2d 608 (Tex.Civ. App.—Dallas 1962, no writ).

As we view the record Champion failed to establish that Rahmberg violated a duty to inspect and repair the latent defect in the mobile home which Champion itself negligently created. In these circumstances, Champion was a wrongdoer to Rahmberg, but Rahmberg was not a wrongdoer to Champion. *Wheeler v. Glazer, supra; Humble Oil and Refining Co. v. Martin, supra.* Consequently, under the common law, Rahmberg was entitled to indemnity. It follows that the statute relied on by Champion is not applicable to this situation and therefore Champion is not entitled to contribution.

The judgment of the trial court is affirmed.