615 P.2d 993

Peggy Sue SANCHEZ, a minor, by her mother and next friend, Priscilla Sanchez, and Priscilla Sanchez, in her own right, Plaintiffs-Appellees,

v.

CITY OF ESPANOLA, a Municipal Corporation; AALCO Manufacturing Company, a Foreign Corporation; and Tiano's Sporting Goods Store, Inc., a domestic corporation, Defendants-Appellants.

No. 4055.

Court of Appeals of New Mexico.

Jan. 10, 1980.

C. Emery Cuddy, Jr., Daniel H. Friedman, White, Koch, Kelly & McCarthy, Santa Fe, for defendants-appellants.

Victor R. Ortega, Montgomery, Hannahs & Andrews, W. Anthony Sawtell, Catron, Catron & Sawtell, Walter R. Kegel, Kegel & McCulloh, Santa Fe, for plaintiffs-appellees.

## OPINION

LOPEZ, Judge.

The City of Espanola appeals from the apportionment of a judgment on a cross-claim requiring it to pay one-half of the total amount of damages awarded plaintiffs in a suit by them against three defendants wherein all three defendants were found jointly and severally liable for the injuries of plaintiff, Peggy Sue Sanchez. We reverse the trial court on the apportionment of contribution between the three defendants.

Peggy Sue Sanchez and her mother sued the City of Espanola, Aalco Manufacturing Company and Tiano's Sporting Goods Store for damages arising from an accident in which a volleyball standard fell and severely injured Peggy Sue's foot, eventually resulting in the amputation of two of her toes. The standard, manufactured by Aalco, had been purchased by the City from Tiano's and was being used in a recreation center under the City's supervision when the accident occurred. A jury found the City liable for the injury under a negligence theory whereas Tiano's and Aalco were found liable under strict products liability. The total award was for $96,000. A judgment holding the three defendants jointly and severally liable for that amount was accordingly entered.

As between the defendants, who had all cross-claimed against each other for contribution or indemnity, the court, sitting without a jury after the verdict had been rendered, found that the City and Aalco should each pay one-half of the judgment and that Aalco should indemnify Tiano's for any costs. The basis of this apportionment was the court's judgment that Tiano's was not negligent but was only a party in the chain of supply, and was therefore not an active tortfeasor as were the City and Aalco. The court concluded that Tiano's liability was derivative and purely technical. The City, claiming it should be required to pay only one-third of the damages since there are three tortfeasors, appeals the court's allocation of damages. Aalco has not appealed the decision that it should indemnify Tiano's, and, therefore, that issue is not before us.

The sole question on appeal is whether, under the Uniform Contribution Among Tortfeasors Act which New Mexico has adopted, damages awarded against three tortfeasors, two of whom are liable under strict products liability and one of whom is liable for negligence, should be split equally three ways, or whether the tortfeasors liable under strict products liability should be considered as one tortfeasor in assessing the amount of contribution between the parties. We hold that, in these circumstances, each defendant should be required to contribute one-third of the total damages. Since the trial court's judgment that Aalco indemnify Tiano's has not been challenged, or decision in this case will result in the City of Espa-

nola paying one-third of the damages and Aalco paying two-thirds.

■ As both negligence and strict products liability sound in tort, the question of contribution between the defendants is properly decided under the Uniform Contribution Among Tortfeasors Act as adopted in New Mexico, §§ 41–3–1 to 41–3–8, N.M. S.A.1978. The pertinent sections read:

41–3–1. *Joint tortfeasors defined.*

For the purposes of this act [41–3–1 to 41–3–8 NMSA 1978] the term "joint tortfeasors" means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

41–3–2. Right of contribution; accrual; pro rata share.

A. The right of contribution exists among joint tortfeasors.

B. A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

\*   \*   \*   \*   \*   \*

■ This Act has been interpreted to require the obligation to contribute toward a payment of a judgment be predicated on joint or several liability. *Rodgers v. Galindo,* 68 N.M. 215, 360 P.2d 400 (1961). Thus, when multiple parties are responsible for the same injury, and all are found liable, each and every one of them is a joint tortfeasor, and is required by the Act to contribute his pro rata share of the judgment against them all. The right to contribution exists among joint tortfeasors regardless of the fact that they have been found liable under different tort theories, such as negligence and strict products liability. *Walters v. Hiab Hydraulics, Inc.,* 356 F.Supp. 1000 (M.D.Pa.1973).

It is not disputed here that contribution obtains between joint tortfeasors liable under different tort theories. Neither Aalco (liable under strict products liability) nor the City of Espanola (liable under negligence theory) contends that the other party

does not have the right to coi    ı. Yet Aalco, claiming that in essence there are two, not three, joint tortfeasors, is asserting that the City has no right to contribution from Tiano's. This is what the trial court found, categorizing Tiano's liability as "purely technical"; but we disagree.

■ Tiano's liability under strict products liability theory arises from its having sold a defective product which eventually injured a user of the product. The seller's liability under this theory is set out in § 402A of the Restatement (Second) of Torts (1965) and was adopted by the New Mexico Supreme Court in *Stang v. Hertz Corp.,* 83 N.M. 730, 497 P.2d 732 (1972). This section states in part:

*Special Liability of Seller of Product for Physical Harm to User or Consumer*

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product,  .   .   .

\*   \*   \*   \*   \*   \*

Subsection (2)(a) clearly indicates that the seller's liability is not predicated upon negligence. Neither, for that matter, is the manufacturer's liability dependent upon negligence under strict products liability theory. *See,* Prosser, *The Fall of the Citadel,* 50 Minn.L.Rev. 791 (1966).

■ Tiano's liability runs directly to the injured plaintiff, just as Aalco's does. Simply because Tiano's received a defective product from Aalco does not make its liability merely technical.

[T]he justification for the strict liability [against the seller] has been said to be

that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; * * *

Restatement, *supra*, Comment c. Tiano's liability results from its having sold a defective product. The plaintiff is as much injured by Tiano's having sold the volleyball standard to the City as by Aalco's having manufactured it in the first place. But for the sale, the injury would not have occurred.

▮ Aalco argues that the relationship between manufacturer and retailer of a product is analogous to the relationship between master and servant. We disagree.

The liability of a master for his servant's torts is vicarious. Vicarious has been defined as, "1: having the function of a substitute: serving instead of someone or something else: acting for a principal: . ." "Webster's New International Dictionary 2549 (3rd ed. 1961). Tiano's does not perform the same functions as Aalco; it is not a substitute. Tiano's is neither employed by, nor owned by, nor is it the agent of Aalco. They are two independent entities. Since we do not find the relationship between Aalco and Tiano's to be analogous to that between master and servant, we do not reach the question of how contribution would be implemented between three tortfeasors where one tortfeasor's liability was vicarious.

▮ It having been established that there are three tortfeasors each directly liable to the plaintiff for her injuries, each tortfeasor has a right to contribution when he has paid more than his pro rata share of the judgment, § 41–3–2(B), *supra*, which is here one-third.

Normally the apportionment of liability effected by contribution is on the basis that "equality is equity," which means that each tortfeasor is required ultimately to pay his pro rata share, arrived at by dividing the damages by the number of tortfeasors. * * *

Prosser, Law of Torts § 50, at 310 (4th ed. 1971). Although some jurisdictions, notably California and New York, have insisted that equitable considerations will determine pro rata shares, *see Ramirez v. Redevelopment Agency of San Francisco*, 4 Cal.App.3d 397, 84 Cal.Rptr. 356 (1970); *Wold v. Grozalsky*, 277 N.Y. 364, 14 N.E.2d 437 (1938), New Mexico has adopted the view that pro rata share means equal share. *Commercial Union Assurance Cos. v. Western Farm Bureau Insurance Cos.*, 18 N.M.St.B.Bull. 830, 93 N.M. 507, 601 P.2d 1203 (1979).

Espanola is required to pay only one-third of the judgment. The propriety of the indemnity awarded Tiano's as against Aalco not having been appealed, Aalco will pay the remaining two-thirds. The order of the trial court is reversed with respect to the apportionment of contribution among the three defendants and the case is remanded for proceedings consistent with this opinion.

IT IS SO ORDERED:

WALTERS, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

Plaintiffs below, who are not involved in this appeal, recovered judgment against defendant, City of Espanola, and defendant, Aalco Manufacturing Company, for damages suffered as the result of a defective volleyball net support. The City of Espanola appeals from a "cross-claim" judgment in which the court ordered that the City on the one hand, and Aalco and Tiano's Sporting Goods Store, Inc., treated as a single entity, on the other hand, should share equally the common liability and should each pay one-half of the judgment in favor of plaintiffs.

On Appeal, the City claims it is liable for only one-third of the judgment under the Uniform Contribution Among Tortfeasor's Act, § 41–3–1, et seq. N.M.S.A. 1978 because Tiano's is also a joint tortfeasor.

A. *Proceedings ending in judgment from which appeal was taken.*

Plaintiffs sued the City in negligence, Aalco and Tiano's in strict products liability, for damages which resulted from an accident in which a volleyball net support manufactured by Aalco, sold to the City by Tiano's and used at the City's recreation center, fell and severely injured one of the plaintiffs. Aalco was the manufacturer, Tiano's the retailer, the City a negligent third person, and plaintiff the user.

The three defendants each cross-claimed against each other for contribution and indemnity in case of a verdict for plaintiffs. These cross-claims were not decided during the presentation of plaintiff's case and became derivative claims among themselves.

In the trial of plaintiffs' case, the jury was instructed (1) that plaintiffs sustained damages by reason of the negligence of the City, negligence that was a proximate cause thereof, and (2) that plaintiffs claimed Aalco and Tiano's as one entity were subject to products liability for an unreasonable risk of injury due to the product being defective, and that this risk was a proximate cause of plaintiff's injury and damages.

The jury returned a verdict against the three defendants, but listed the City separately, and listed Aalco and Tiano's as one entity. Judgment was rendered against the three defendants and each of them jointly and severally.

By agreement of the parties, the cross-claims for contribution and indemnity were submitted to the court without a jury. Requested findings of fact and conclusions of law were submitted. The trial court made the following unchallenged findings of fact:

1. The jury by its verdict has found that negligence of the defendant City of Espanola and a defective volleyball standard supplied by defendant Aalco Manufacturing Company were *the concurring proximate causes of the accident * *. Defendants City and Aalco are therefore in pari delicto.*

2. Defendant Tiano Sporting Goods Store, Inc. purchased the volleyball standard from defendant Aalco and sold it to defendant City. *There was no evidence of negligence by defendant Tianos. It did not manufacture the volleyball standards; it merely received the disassembled standards in boxes from the manufacturer, defendant Aalco, and delivered the boxes, unopened, to defendant City at the Richard Lucero Center.* [Emphasis added.]

The court concluded that:

\* \* \* \* \* \*

B. . . . [Tiano's] liability under Restatement Torts 2nd, Section 402A, *is derivative only,* as a party in the chain of supply \* \* \*.

\* \* \* \* \* \*

D. Defendant City and defendant Aalco were each *active tortfeasors.* Defendant Tianos was not an active tortfeasor, *its liability being purely technical.*

E. Defendant City \* \* \* and defendants Aalco and Tianos treated as a single entity \* \* \* should share equally the common liability and should each pay one-half of the judgment in favor of plaintiffs, *with Tianos having judgment over for indemnity against Aalco for any and all of plaintiffs' judgment as against it, Tianos.* [Emphasis added.]

In the final judgment rendered, Tiano's was awarded judgment on its cross-claim for indemnity against Aalco for all sums awarded against Tiano's by the judgment in favor of plaintiffs. Aalco did not appeal from this judgment. This judgment is final and in effect on this appeal.

*Summarized:*

It is undisputed that:

1. Aalco and the City were active tortfeasors in pari delicto (in equal fault). As active tortfeasors, the defective product supplied by Aalco and the negligence of the City were the concurring proximate cause of the accident.

2. Tiano's was not an active tortfeasor in the sense that it was actively or passively negligent. It was neither.

3. Tiano's was granted judgment over for indemnity against Aalco.

The only dispute is whether Tiano's, a retailer in the chain of supply, was a "joint tortfeasor" along with Aalco and the City even though Tiano's liability is derivative under the doctrine of strict products liability.

**B.** *Tiano's was not a joint tortfeasor under the "Joint Tortfeasors" Act.*

Under the "Joint Tortfeasors" Act, "the term 'joint tortfeasors' means two or more persons jointly or severally *liable in tort* for the same injury to person or property. * * "" Section 41–3–1, N.M.S.A. 1978. "The right of contribution exists among joint tortfeasors." Section 41–3–2. "*This act does not impair any right of indemnity under existing law.*" Section 41–3–6. [All emphasis added.]

What is meant by "joint tortfeasors"? *Bowen v. Iowa National Mutual Insurance Company*, 270 N.C. 486, 155 S.E.2d 238, 243 (1967), quotes the following definition:

"Joint tort-feasors are those who act together in committing a wrong, or whose acts, if independent of each other, unite in causing a single injury."

Next, what is meant by "joint tortfeasors . . . liable in tort"? "A tort is by definition an unlawful violation of the legal right of another 'other than a mere breach of contract, express or implied.'" *Waddey v. Davis*, 149 Ga.App. 308, 254 S.E.2d 465, 467 (1979). The term "liable" refers to the existence of a cause of action rather than the right to enforce it. "Liable in tort" means any person or persons who have negligently contributed to another's injury. *Zarrella v. Miller*, 100 R.I. 438, 217 A.2d 673 (1966). "Liable" has also been defined as "subject to suit" or "liable in a court of law or equity." *Tamashiro v. De Gama*, 51 Hawaii 74, 450 P.2d 998 (1969).

The status of the parties in court when their cross-claims for contribution or indemnity were filed were not yet tried to findings and judgment. The time to determine whether the parties were possessed of the accrued right of contribution or indemnity against each other had not yet arrived. That right arises after judgment is rendered against them. Then the parties will be adjudged joint tortfeasors or indemnitors-indemnitees. This proceeding is a derivative right and not a new cause of action. *Olsen v. Snyder*, 249 N.W.2d 266 (S.D. 1976). The fact that the three defendants were held liable to plaintiff did not establish the right to contribution or indemnity.

" * * * The rights of the plaintiff against the defendants and the rights of the defendants inter sese are not the same. The claim of the plaintiff was based on a tort and she was privileged to exact payment of the whole sum from any one or more of the defendants, *while the claims of the defendants among themselves are founded on the application of equitable principles and do not sound in tort.*" *Nationwide Mut. Ins. Co. v. Philadelphia Elec. Co.*, 443 F.Supp. 1140, 1145 (D.C.Pa. 1977). [Emphasis added.]

To sum up the meaning of "joint tortfeasors . . . liable in tort," we refer to two or more defendants with access to the courts coupled with the right to determine among themselves whether, upon application of equitable principles, both or all of them acted together in committing a wrong, or both or all of whose acts, if independent of each other, united in causing a single injury.

Next, we must determine the meaning of "The right of contribution exists among joint tortfeasors." Section 41–3–2.

The philosophy behind the allowance of contribution between joint tortfeasors is that the discharge of an obligation by one of the tortfeasors without proportionate payment from the other gives the latter an advantage to which he is not entitled. For contribution to be available, two or more defendants must have acted in concert, or independently, in causing a single injury. Their acts must have mutually contributed to the injury in an indivisible manner. The fact that the acts of the defendants are not simultaneous but successive does not mean that contribution is improper, where the acts concur in causing the injury. In other words, for contribution to exist, the defend-

ants must be in pari delicto (in equal fault). They must each be active tortfeasors and primarily liable to the damage done. If one or more of the defendants are passively negligent (liability imposed by law), then this defendant or defendants are entitled to indemnity over against the defendant who is actively negligent. *Krametbauer v. McDonald*, 44 N.M. 473, 104 P.2d 900 (1940); *Lommori v. Milner Hotels*, 63 N.M. 342, 319 P.2d 949 (1957); *Rio Grande Gas Company v. Stahmann Farms, Inc.*, 80 N.M. 432, 457 P.2d 364 (1969); *Harmon v. Farmers Market Food Store*, 84 N.M. 80, 499 P.2d 1002 (Ct.App. 1972); *Standhardt v. Flintkote Company*, 84 N.M. 796, 508 P.2d 1283 (1973).

*Standhardt* stands for the proposition that Standhardt, an architect, who was negligent, had no right to contribution or indemnity from Flintkote, the manufacturer of a roofing compound, because Flintkote was not negligent with respect to the construction of a building, and was not subject to the doctrine of strict products liability. Where there was no negligence on the part of Flintkote, there can be no right of contribution on the part of Standhardt to recover one-half his loss.

Under the *Standhardt* doctrine, absent strict products liability law, Tiano's was not a joint tortfeasor because it was not actively negligent. The City would not have the right to contribution.

To sum up the meaning of "The right to contribution," we refer to two or more joint tortfeasors, each of whom were actively negligent in producing the injury. If one joint tortfeasor pays plaintiff's judgment, the paying tortfeasor has the right of contribution of a pro rata share from the other joint tortfeasors. Pro rata means equal share.

To sum up the meaning of the "Joint Tortfeasors" Act thus far, we refer to two or more defendants with access to the courts coupled with the right to determine among themselves whether, upon application of equitable principles, both or all of them acted together in committing a wrong, or both or all of whose acts, if independent of each other, united in

causing a single injury. If so, they are both or all joint tortfeasors, each of whom are entitled to contribution. If one of the joint tortfeasors pays plaintiff's judgment, the paying tortfeasor has the right to contribution of a pro rata share from the other or all joint tortfeasors.

Finally, we must determine the meaning of "This act does not impair any right of indemnity under existing law." Section 41–3–6.

This section expressly reserved the right of indemnity under the "Joint Tortfeasors" Act. "It is unreasonable to assume that the New Mexico legislature intended to grant the right of contribution to wrongdoers in pari delicto and take away from persons guilty only of imputed or constructive wrong the right to indemnity from the primary wrongdoer." *Thomas v. Malco Refineries*, 214 F.2d 884, 886 (10th Cir. 1954). The right to indemnity enforces a duty on the primary wrongdoer to respond in damages.

Separate and apart from "joint tortfeasors * * * liable in tort," "In this state the right of indemnity is preserved by statute. * * * Although the right to indemnity traditionally arose from a contract, express or implied, modern law indicates a trend to allow indemnity on the basis of equity, *for example, where one person is exposed to liability by the wrongful act of another* in which he does not join." [Emphasis added.] *Helgerson v. Mammoth Mart, Inc.*, 114 R.I. 438, 335 A.2d 339, 341 (1975); *Stuart v. Hertz Corp.*, 351 So.2d 703 (Fla. 1977) (which uses the "active-passive" test).

*Krametbauer, supra*, adopted the "active-passive" test to determine indemnity. This test means that where two parties are liable in tort, one vicariously, (*respondeat superior*, owner of automobile operated by negligent driver, municipal liability for defects created by property owner, general contractor-subcontractor, all cases of "imputed or constructive wrong") and the other the active perpetrator of the wrong, the former is a "passive" wrongdoer, and the latter an "active" wrongdoer. The "active" wrong-

doer must indemnify the "passive" wrongdoer. This burden is a liability imposed by law upon the "active" wrongdoer.

"The 'active-passive' tests to determine when indemnification will be allowed by one party held liable for negligence against another negligent party has in practice proven elusive and difficult of fair application. The terms 'primary' and 'secondary' negligence . . . have been regarded as more accurate and technically appropriate." *Dole v. Dow Chemical Company*, 30 N.Y.2d 143, 147, 331 N.Y.S.2d 382, 386, 282 N.E.2d 288, 291 (1972).

In the instant case, the City was negligent. Aalco supplied a defective product. Both were active wrongdoers. Tiano's was not negligent. Its liability was imposed by law. It was a "passive" wrongdoer. If Tiano's did not join with the City in negligence, and it did not, perhaps Tiano's should be indemnified by the City. If Tiano's did not join with Aalco in supplying a defective product, which will be shown later, Tiano's should be indemnified by Aalco. It was.

Reason and logic dictate that indemnity destroys any joint tortfeasorship between two parties. When the primary wrongdoer indemnifies the secondary wrongdoer, these wrongdoers are not joint tortfeasors because the secondary wrongdoer is not at fault. The primary wrongdoer, an indemnitor, having paid all of the damages, cannot seek contribution from the secondary wrongdoer, the indemnitee. The indemnitee is eliminated as a joint tortfeasor. In the instant case, absent products liability law, Tiano's, indemnified by Aalco, is not a joint tortfeasor.

This indemnification rule has been applied in comparable relationships.

In *Larsen v. Minneapolis Gas Company*, 282 Minn. 135, 163 N.W.2d 755 (1968), three defendants were involved in a gas explosion—the gas company, a general contractor and a subcontractor. The gas explosion was caused by the negligence of the gas company in laying defective pipe and by negligence of the subcontractor in damaging the gas main. The general contractor was only vicariously liable based upon its relationship with the subcontractor. The court held:

(1) The contractor was entitled to indemnity from the subcontractor.

(2) The gas company and subcontractor were each liable to pay one-half the total verdict.

The court said:

\* \* \* Contribution, like indemnity, is an equitable doctrine. [citation omitted.] It does not appear equitable to require one defendant to pay two-thirds of the verdict where the jury has determined that there were two distinct negligent acts which combined to cause the accident and that defendant's liability is based on its responsibility for only one of those acts. Further, there does not appear to be any case law supporting such a result. \* \* \* [163 N.W.2d at 764.]

\* \* \* \* \* \*

Therefore we hold that where there are multiple defendants and one or more of them is liable to the plaintiff solely on the basis of negligence imputed to it by virtue of its relationship with one of the other defendants, the one guilty of the negligent conduct and the one to whom the negligence is imputed are to be treated as one party for purposes of determining the fair share of the verdict each defendant must pay. [163 N.W.2d at 765.]

*Nationwide, supra*, involved (1) *an owner of property upon which an apartment building would be constructed*, (2) a contractor to construct the building, (3) a subcontractor to install power poles, (4) a carpenter contractor, and (5) a *woodlifter employed by the carpentry contractor*. The active negligence that caused decedent's death was that of the *subcontractor* and *woodlifter*.

Nationwide, who insured the woodlifter, settled with decedent's estate and sued the other defendants for contribution based upon the negligence of the others. The jury returned a verdict in favor of Nationwide against the owner of the property and the subcontractor.

The Pennsylvania "Joint Tortfeasors" Act also provided that it does not impair any rights of indemnity under existing law.

The court held that the owner of the property was vicariously liable for the acts of the subcontractor; that the owner was secondarily liable for the active negligence of the subcontractor who was primarily liable and the owner was entitled to be indemnified by the subcontractor.

The court said:

> The right to indemnity as between a tortfeasor secondarily and one primarily liable has long been recognized in Pennsylvania. [443 F.Supp. at 1147.]
>
> *[I]t is not the total number of defendants involved who could have been liable to the deceased's estate but the number of directly and primarily liable parties which determines the number of pro-rata shares.* Only two parties were directly and primarily liable * * * [the subcontractor] and * * * [woodlifter]. Therefore liability for contribution is divisible in only two parts, one part being based upon the negligence of * * * [subcontractor] and the other part being based upon the negligence of * * * [woodlifter] the plaintiff's insured. [Emphasis added.] [443 F.Supp. at 1146–47.]

For similar results reached, see *McCabe v. Century Theatres, Inc.*, 25 A.D.2d 154, 268 N.Y.S.2d 48 (1966) (owner-tenant and sub-tenant joint tortfeasors; pro rata share not interpreted in arithmetical sense); *Rogers v. Dorchester Associates*, 32 N.Y.2d 553, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973) (owner-manager indemnified by elevator company).

To sum up the meaning of the "Joint Tortfeasors" Act, we refer to two or more defendants with access to the courts coupled with the right to determine among themselves whether upon application of equitable principles, both or all of them acted together in committing a wrong, or both or all of whose acts, if independent of each other, united in causing a single injury. Indemnitees who are secondary wrongdoers and whose liability is imposed by law are not joint tortfeasors and are not subject to contribution. Indemnitors are joint tortfeasors and have the right to contribution. If one joint tortfeasor pays the plaintiff's judgment, the paying tortfeasor has the right of contribution from the other joint tortfeasor or all joint tortfeasors.

In the instant case, absent products liability law, Aalco and the City are joint tortfeasors whose acts independent of each other united to cause a single injury. Tiano's was a intermedium, a connective link between Aalco and the City. It was not negligent. It was not an active wrongdoer. It simply sold and delivered unopened boxes to the City that contained the disassembled volleyball net support manufactured by Aalco. Tiano's liability was not based upon negligence, nor knowledge of the contents of the boxes that contained defective materials, nor because its conduct was a separate or concurrent proximate cause of the accident. Its liability was not based on tort law in the sense that it committed a wrongful act which became a proximate cause of plaintiff's injury. Its liability was derivative under products liability law, therefore technical. Tiano's was not a joint tortfeasor of either Aalco or the City.

C. *Tiano's was not a joint tortfeasor under Restatement (Second) Section 402A, strict products liability.*

*Second*, we must analyze the meaning of § 402A, strict products liability, set forth in the majority opinion. Under this section, a manufacturer as well as a retailer is liable for having manufactured and sold a defective product which eventually injured a user of the product. But the stamp of "liability" does not transform a retailer into a joint tortfeasor.

The manufacturer and retailer each have a duty to the other—the manufacturer to sell the retailer a non-defective product, and the retailer not to change, alter or modify the product purchased from the manufacturer. If each violate the duty to the other, they become primary joint tortfeasors because their independent wrongful acts unite in causing a single injury. If the retailer knew or should have known of the

defect before selling the product, and acts together with the manufacturer in causing a single injury, each is a primary joint tortfeasor. Otherwise they are not joint tortfeasors. "In the field of products liability the claim of indemnity ordinarily runs down the chain of distribution and not in the reverse direction." *Dulin v. Circle F Industries, Inc.*, 558 F.2d 456, 464 (8th Cir. 1977). *McClish v. Niagra Machine & Tool Works*, 266 F.Supp. 987, 990 (S.D.Ind. 1967) puts it this way:

> [A]s between the supplier of a defective product which does harm to an ultimate purchaser or user and the merchant who stocks and sells it as received, the merchant is entitled to indemnity from the supplier. * * * But again, the right of indemnity is destroyed if the merchant knew, or should have known of the defect before reselling the product.

*Farr v. Armstrong Rubber Company*, 288 Minn. 83, 179 N.W.2d 64 (1970) sets the tone of a retailer's status in a products liability case. Plaintiffs were injured by reason of a defective tire manufactured by Armstrong and sold by Olson, a retailer. In granting Olson indemnity against Armstrong, the court said:

> Thus, Olson was found liable either on the grounds of breach of implied warranty or of strict liability in tort. *In neither instance did Olson perpetrate any active wrong upon plaintiffs. Olson could not have found the defect with reasonable inspection, and it was not Olson's responsibility to alter the product in any way before it was sold.* Thus * * * Olson's liability stems solely from its passive role as the retailer of a defective product furnished to it by the manufacturer, and it therefore is entitled to indemnity. [Emphasis added.] [179 N.W.2d at 72.]

Olson, the retailer was not an "active" primary wrongdoer, one that would place him in the joint tortfeasor category. He was a "passive" secondary wrongdoer whose liability was imposed by the doctrine of strict liability. Equitable principles cannot portray an "innocent" retailer as a primary wrongdoer who joins hands with a manufacturer that produces a defective product. The "innocent" retailer is added as a party liable to protect the public against an insolvent or absent manufacturer. His liability does not sound in tort, nor does it give the manufacturer the right to contribution. His liability sounds in the right to indemnity as an equitable principle and it shifts the entire burden of payment over onto the manufacturer to do justice. The "innocent" retailer does not fall within the definition of "joint tortfeasor." However, under strict products liability law, a "guilty" retailer, one who violates his duty to the manufacturer or to the user, becomes an active primary tortfeasor.

*Champion Mobile Homes v. Rasmussen*, 553 S.W.2d 237 (Tex.Civ.App. 1977) introduces into products liability law the concept of the retailer as an "innocent" or "guilty" party who may or may not be a joint tortfeasor. This is a products liability case which also involves the right of contribution or indemnity between a retailer and a manufacturer of a mobile home. Champion is the manufacturer and Rahmberg is the retailer. The court said:

> As between the joint tortfeasors, the alleged tort of the indemnitor against the indemnitee is distinct and independent from any tort committed by the indemnitor and indemnitee against the injured third party. Consequently, if under the facts in the present case, Champion violated a duty owed to Rahmberg and Rahmberg violated no duty owed to Champion, then Rahmberg would be entitled to full indemnity and the judgment of the trial court must be sustained. *If, on the other hand, the facts show that each codefendant violated a duty owed to the other, then each must bear its proportionate burden * * * and Champion would be entitled to contribution.*

> * * * * * *

We have found no Texas cases, and have been cited none, holding that a vendor has a duty to inspect or test a product manufactured by another for latent defects either before or after it has been

sold to a third party. The weight of authority seems to be that the vendor has no such burden. [citations omitted.] *Accordingly, we hold that the vendor owes no duty to the manufacturer to inspect for latent defects.* It therefore follows that Rahmberg breached no duty toward Champion in this respect. [Emphasis added.] [553 S.W.2d at 243.]

Of course, where the retailer has a duty to inspect and test the carburator of an automobile but fails to do so, the retailer may become an active primary wrongdoer subject to contribution. *Walsh v. Ford Motor Company*, 70 Misc.2d 1031, 335 N.Y.S.2d 110 (1972).

The City relies on *Bristol-Meyers Co. v. Gonzales*, 548 S.W.2d 416 (Tex.Civ.App. 1976), reversed on other grounds, 561 S.W.2d 801 (Tex. 1978), and *Walters v. Hiab Hydraulics, Inc.*, 356 F.Supp. 1000 (M.D.Pa. 1973). These cases support the judgment of the trial court. They hold that a manufacturer of a defective product [Aalco] and an active tortfeasor [the City] are joint tortfeasors. There was no retailer involved.

Bristol-Meyers manufactured a product called Kantrex used by Dr. Gonzales which caused the plaintiff to become totally and permanently deaf. There was no intermedium, a connecting link, between Bristol-Meyers and Dr. Gonzales such as a retailer. Both were at fault and the fault of both concurred to cause plaintiff's injuries. Both were joint tortfeasors and Bristol-Meyers was granted contribution from Dr. Gonzales. What is important to note is that § 402A on strict liability was included in the "Joint Tortfeasors" Act. The court said:

Sections 402A and 402B were adopted to insure that a person injured by a defective product was protected through strict liability. To hold, also, that these sections deprive a manufacturer or seller of a right of contribution from a negligent third party, contributing to the plaintiff's injury, would go beyond the second policy considerations upon which these sections are founded. [548 S.W.2d at 428.]

*Walters, supra*, was cited as authority in *Bristol-Meyers*. It held that:

The underlying policy of § 402A is in no way diluted by the right of the strictly liable seller or manufacturer to obtain contribution from a third party whose negligence was a proximate cause of the injury.

We must keep in mind that *Bristol-Meyers* preceded *Champion Mobile Homes* in Texas. When the broad legal statement is made that a seller has the right to contribution from a negligent third party, it contemplates a seller who violated a duty and thereby became a joint tortfeasor with the negligent third party.

*Bristol-Meyers* and *Walters* stand for the proposition that under Restatement of Torts (Second) § 402A, strict liability, that the manufacturer of a defective product is entitled to contribution from a negligent third party and each of them share the burden of any judgment rendered against them by a person who is injured. This rule was also followed in *General Motors Corp. v. Simmons*, 545 S.W.2d 502 (Tex.Civ.App. 1976).

To sum up the meaning of strict products liability law in its relationship with the "Joint Tortfeasors" Act and the respective liability of joint tortfeasors, it is clear that both are read together as one; that the liability established under the "Joint Tortfeasors" Act applies under products liability law.

Under strict products liability law, Tiano's was not a joint tortfeasor. It had no duty to open the boxes received from Aalco, assemble the materials, inspect and test the volleyball net support before or after it had been sold to the City. Its liability was not based on negligence, nor on any knowledge that the contents of the boxes contained any defective material, nor because its conduct was a separate or concurrent proximate cause of the accident. Its liability was not based on tort law in the sense that it committed a wrongful act which became a proximate cause of plaintiff's injury. Its liability was derivative, therefore, technical, because it sold and delivered unopened boxes to the City.

This appeal should be affirmed.